(No. 6351.   April 24, 1937.)

MABLE R. GERKIN, Wife of GLEN GERKEN, Respondent,
    v. DAVIDSON GROCERY COMPANY, a Corporation,
    Appellant.

[69 Pac. (2d) 122.]

Fisher & Coffin for Appellant.

Bothwell & Povey for Respondent.

HOLDEN, J.—Eugene G. Gauss and Lydia M. Gauss, husband and wife, were the owners of certain real property located in Jerome county, Idaho. August 25, 1919, the Gausses mortgaged that property to the Equitable Savings and Loan Association for $6,000. October 1, 1919, the Gausses again mortgaged the property to W. A. Heiss for $500. Both mortgages were recorded October 7, 1919. Later, June 4, 1923, the Gausses also mortgaged the property to appellant Davidson Grocery Company for $3,000.

February 25, 1925, the mortgagors conveyed the property by quitclaim deed to Glen Gerken, husband of respondent, the deed being recorded March 2, 1925. Neither Gerken nor respondent assumed or agreed to pay either or any of the above-mentioned mortgages.

August 19, 1925, Heiss, the second mortgagee, instituted foreclosure proceedings against the original mortgagors Eugene G. Gauss and Lydia M. Gauss, Davidson Grocery Company, and Augusta Clouchek, a subsequent judgment creditor. In that suit, neither Gerken nor his wife were made parties nor did either appear therein. Appellant Davidson Grocery Company, having been served with summons, defaulted. Decree of foreclosure was entered and on January 23, 1926,

the property was sold by the sheriff at public auction to Glen Gerken for the sum of $798.29, being the whole amount due upon the judgment, including interest and costs. There was no redemption and subsequently the sheriff issued Gerken a deed to the premises which was recorded February 24, 1927.

February 26th following, appellant Davidson Grocery Company commenced a suit to foreclose its mortgage. The defendants joined were the Gausses, W. A. Heiss, Glen Gerken, H. W. Clouchek, and H. W. Clouchek, executor of the estate of Augusta Clouchek, deceased. Glen Gerken's wife, respondent here, was not joined as a party or served with summons nor did she appear personally or by attorney. Gerken defaulted and did not contest the Davidson Grocery Company foreclosure suit. Decree was entered, the property sold, and the premises bid in by appellant Davidson Grocery Company, to whom later was issued a sheriff's deed.

Thereafter, to wit, September 29, 1928, respondent Mable R. Gerken commenced suit against the Davidson Grocery Company, W. A. Heiss, H. W. Clouchek, Henry W. Clouchek, executor of the estate of Augusta Clouchek, and Fred H. Turner, to quiet her alleged title to the property covered by the above-mentioned mortgages and deeded to Glen Gerken, her husband, as aforesaid.

July 8, 1929, the Gerken suit to quiet title was tried. It was shown during the trial of the suit that Glen Gerken, out of community funds, had paid the sum of $798.29 in satisfaction of the said Heiss mortgage; that the Gerkens had not occupied the mortgaged property and had not received any of the rents of the property; that Gerken had paid the sum of $600 on the first mortgage given to the Equitable Savings and Loan Association; that Gerken had also paid taxes in the sum of $266.04; that appellant Davidson Grocery Company had collected between $1500 and $1600 in rents and that there were back rents then due; and that the Davidson Grocery Company had purchased the first mortgage and had taken an assignment thereof.

And it appears that during the trial of the Gerken suit to quiet title the following colloquy occurred between the trial court and counsel for the respective parties:

"Mr. COFFIN: It may become necessary to take an accounting of the various items, receipts and disbursements in this action. The necessity of that is remote. This is an action in which an accounting of the rents, profits and expenditures is unnecessary. I suggest that we let the accounting matter rest until the court has decided the questions of law. I think we can agree as to the amounts.

"The COURT: Your idea is that that is to be determined at a later date in the event a determination of that question becomes necessary?

"Mr. COFFIN: Yes.

"Mr. FISHER: It could only be a partial accounting because there are rents accruing right now. We could only have a partial accounting at this date.

"Mr. BOTHWELL: I wish to offer in evidence the receipt for taxes paid.

"Mr. FISHER: We have no objection to that.

"Mr. COFFIN: Would it be agreeable to you to let the accounting question ride for the present? That in case it becomes necessary we will agree upon it?

"Mr. BOTHWELL: As to the accounting feature of it, that would be agreeable. I would want to inquire to some extent as to transactions between the Davidson Grocery Company and the first mortgagee.

"Mr. COFFIN: You want to know the amount paid to the first mortgagee?

"Mr. BOTHWELL: Yes. We may have a report showing moneys received by the first mortgagee in the way of rents, credits given and money paid to the Davidson Grocery Company and the first mortgagee. With the introduction of that, and the introduction of the amount of money—the actual amount of money—we have paid for taxes and how it was paid, we will rest.
. . . .

"Mr. COFFIN: The record should show that the matter of this accounting should be held open so that when final decree is entered it may be brought down to date. If we find anything that would figure in the final decision, we want to introduce it up until that date."

Thereafter, a decree was entered quieting in respondent the title to the mortgaged property, in which decree the trial court expressly retained jurisdiction of the matter of an accounting between the parties.

February 26, 1930, the Davidson Grocery Company appealed from that decree to this court. On appeal, respondent contended, first, that inasmuch as the subject matter was concededly community property, she was not bound by the decree in appellant's foreclosure suit, not having been made a party thereto, and, second, that the proceedings were void since the appellant, having been joined in the Heiss suit, defaulted therein and wholly failed to redeem from the ensuing sale.

February 5, 1931, this court held (*Gerken v. Davidson Grocery Co.*, 50 Ida. 315, 296 Pac. 192) that respondent Mable R. Gerken was not bound by the decree in appellant Davidson Grocery Company's foreclosure suit, not having been made a party thereto, but that she could not quiet title as against appellant Davidson Grocery Company, mortgagee, without paying the mortgage debt, and reversed the judgment of the district court quieting title to the property in respondent.

On the same day, to wit, February 5, 1931, a *remittitur* issued from this court to the district court as follows: "This cause having been heretofore heard and taken under advisement by the court, and the court having fully considered the same, on this day the decision of the court is delivered by Chief Justice Lee, to the effect that the judgment of the district court of the eleventh judicial district, Jerome County, be and the same is hereby reversed."

Thereafter, March 6, 1931, the trial court entered a decree, the material parts of which read as follows: "That the legal title to said premises (the mortgaged property) is hereby quieted in said Davidson Grocery Company, subject only to an outstanding equity of redemption in favor of the plaintiff, Mable R. Gerken, . . . . and "that the plaintiff, Mable R. Gerken, now owns and holds an equity of redemption in said premises from that certain mortgage upon said premises bearing date the 4th day of June, 1923," and further "that the complaint of the plaintiff herein is hereby dismissed."

October 2, 1931, respondent Mable R. Gerken moved that an order be made and entered requiring appellant Davidson Grocery Company to render an account showing all credits and debits to be allowed or charged against the real property involved in the suit. An affidavit in opposition to the motion was filed by appellant. It alleged that on the 23d day of June, 1931, a suit in equity was commenced in the District Court of the United States for the District of Idaho, Southern Division, by appellant Davidson Grocery Company, against respondent for the strict foreclosure of the equity of redemption of respondent, a copy of the bill of complaint being attached to said affidavit; that on the 1st day of October, 1931, respondent filed an answer to said bill of complaint; that said suit in equity was still pending in said court and undetermined; and that respondent had not redeemed, and had not offered to redeem, the property.

December 1, 1932, respondent filed an application for leave to file a supplemental complaint for an accounting, which application was, on the same day, granted and allowed and the supplemental complaint filed. The pertinent allegations of the supplemental complaint are: that it was agreed that all questions of an accounting of the various items of receipts, disbursements, rents, profits, and expenditures of the parties in relation to the property involved in the Gerken suit to quiet title, be, and were, left for the future determination of the court in said suit; that on February 25, 1925, respondent and her husband became the owners of the property involved; that said property became and was thereafter the community property of respondent and her husband; that she did not, nor did her husband, assume or agree to pay any indebtedness of the said E. G. Gauss or any incumbrance against said property; that at the time of said conveyance, said property was subject to the mortgages hereinbefore mentioned; that on August 19, 1925, W. A. Heiss, the holder of the second mortgage, brought suit against Eugene G. Gauss and wife, the Davidson Grocery Company, and Augusta Clouchek to foreclose that mortgage; that personal service of summons was made on appellant Davidson Grocery Company and that its default was entered October 9, 1925; that December 28, 1925, a decree of foreclosure was entered, order of sale issued,

and notice of sale given; that the property was about to be sold on January 23, 1926, when respondent's husband, Glen Gerken, was required to, and did, in order to protect the community, pay to the sheriff the sum of $798.29, which was the total amount due on the foreclosure sale; that sheriff's certificate of sale was thereupon issued to respondent's husband and duly recorded; that at the time of said conveyance, the first mortgage payable to the Equitable Savings and Loan Association was in default and that respondent's husband, Glen Gerken, was required to, and did, in order to protect the community, pay the sum of $600; that at the time of purchase of the premises by Glen Gerken at foreclosure sale, January 23, 1926, the premises were rented and that all the rent was applied from that date to October 7, 1927, on the first mortgage to the said Equitable Savings and Loan Association to prevent foreclosure; that respondent's husband was required to, and did, pay the sum of $266.04 taxes to protect the community interest of the parties; that the said sums of money so paid, to wit, $798.29, $600, and $266.04, were paid to discharge prior liens against the property; that July 6, 1931, respondent served upon counsel for appellant her said motion for an accounting; that July 15, 1931, appellant filed notice requiring respondent to post security for costs for further proceedings; that August 19, 1931, respondent filed an undertaking for costs.

December 24, 1932, appellant filed a general demurrer to the supplemental complaint. July 19, 1933, the court overruled the demurrer. Thereafter, July 29, 1933, appellant answered. It denied the material allegations of the supplemental complaint. It admitted that February 25, 1925, respondent, together with her husband, Glen Gerken, became the owner of the mortgaged property; it also admitted service by respondent of her motion for an accounting, and, as hereinbefore pointed out, that March 6, 1931, the trial court quieted title to the mortgaged property in appellant, subject only to an outstanding equity of redemption in favor of respondent, and dismissed respondent's complaint.

February 21, 1935, the matter was heard upon the supplemental complaint of respondent and the answer thereto of appellant. Appellant, although notified, was not present at

the hearing. Respondent offered, and the court admitted, transcript of the evidence in the Mable R. Gerken suit to quiet title. Respondent also offered, and the court admitted, the exhibits which had been admitted in evidence in the trial of the Gerken suit and thereupon respondent rested. Thereafter, December 14, 1935, findings of fact and conclusions of law were made and filed and judgment was entered in favor of respondent and against appellant for the sum of $1,664.33, being the aggregate of the sums paid by the community to protect its interest in the mortgaged property, for the payment of which the court awarded respondent a first and prior lien against the mortgaged property, from which judgment the Davidson Grocery Company appeals to this court. .

That the above-quoted colloquy between the trial court and counsel for the respective parties is, in effect, a stipulation that an accounting of rents and disbursements should be had, and that such accounting be held up until the questions of law affecting respondent's alleged title to the mortgaged property were determined, is not seriously challenged, but it is contended by appellant that "In order to have the right to demand an accounting, it was necessary for Mrs. Gerken to institute proceedings to redeem, and it is an indispensable part of such proceedings that she should make a *bona fide* offer to pay the amount due with costs." In other words, appellant contends that respondent has no right to an accounting except for the purpose of redeeming the mortgaged property. That contention presents the question as to whether one to whom mortgaged real property has been conveyed, under no legal obligation to do so, for the protection of his interest in such property, pays incumbrances and liens of record against the property, is entitled to subrogation.

Whether the doctrine of subrogation is applicable to any particular case depends upon the peculiar facts and circumstances of such case. (*Houghtelin v. Diehl*, 47 Ida. 636, 277 Pac. 699.) The facts in the case at bar bearing upon the question as to whether the respondent is entitled to the benefits of the doctrine of subrogation are briefly as follows: that at the time of the conveyance of the real property in question by the Gausses to the Gerkins, three mortgages stood of record against the property; that in accepting a conveyance of such

property, the Gerkens did not obligate themselves to pay the said mortgages; that the Equitable Savings and Loan Association mortgage and the Heiss mortgage were both prior to appellant's mortgage; that the Gerkens paid and satisfied the Heiss mortgage; that they paid the sum of $600 on the first mortgage given to the Equitable Savings and Loan Association; that they paid taxes levied against the property in the sum of $266.04; that they made such payments for the protection of the community interest in the property; that the payments made by the Gerkens inured to the benefit of appellant; that the Gerkens never actually occupied or enjoyed the property in any way, nor received any of the rents thereof; that title to the property was decreed to appellant in the Gerken suit.

This court in *Houghtelin v. Diehl, supra,* in defining the doctrine of subrogation, had this to say:

"Subrogation, in its broadest sense, is the substitution of one person for another, so that he may succeed to the rights of the creditor in relation to the debt or claim and its rights, remedies and securities. The doctrine is derived from the civil law from which it has been adopted by courts of equity. . . . . Its principle is often extended to those who, because of their interest in the property on which debts of others are a charge, are entitled to pay such debts and be substituted to the place of the original creditor. Generally speaking it is only in cases where one advances money to pay the debt of another to protect his own rights that a court of equity substitutes him in place of the creditor as a matter of course, without any express agreement to that effect. The doctrine of subrogation is not administered as a legal right but the principle is applied to subserve the ends of justice and to do equity."

In *Richardson v. American Surety Co.,* 97 Okl. 264, 223 Pac. 389, 392, the court said:

"The principle to be derived from the doctrine of subrogation is that it is born of equity and results from the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending, like other equitable doctrines, upon the

facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.''

In the same case, the court further said:

''No doctrine of equity jurisprudence is more beneficent in its operation than is subrogation, and perhaps none stands in higher favor. No general rule can be laid down which will afford a test in all cases for its application, and its exercise depends upon the particular facts and circumstances of each case, and is not enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration.''

Jones on Mortgages, sec. 1114, states the principle as follows:

''One who has paid a debt under colorable obligation to do so, in order that he may protect his own interest, or under an honest belief that he is bound, is entitled to be subrogated and where one pays a debt in good faith believing that he has an interest to protect, he will be subrogated though he be mistaken in such belief.''

See also: *Mitchell v. Jackson,* 177 Okl. 441, 60 Pac. (2d) 390.

It appearing that the Gerkens in good faith made payments in the total sum of $1,664.33 for the protection of the community interest in the property, that such payments inured to the benefit of appellant, and that the Gerkens received no benefit from such payments, to refuse, under these circumstances, to apply the rule of subrogation would be most inequitable and unjust. It would amount to taking that sum from the respondent and handing it over to the appellant, without any consideration therefor.

It is contended by appellant, however, that ''it is the duty of a party to an action to quiet title to real property to set forth every title or interest he has and after entry of the decree he is barred from asserting any title or interest which could have been asserted in that action.'' Conceding that to be the rule, it has no application here because respondent Gerken by her supplemental complaint asserts no interest in, or claim to, the property in question. What she does

assert is, her right to an accounting and to the benefits of
the doctrine of subrogation. Respondent and appellant hav-
ing stipulated and agreed that an accounting should be had,
the court having retained jurisdiction of the matter of an
accounting, the respondent having filed a supplemental com-
plaint for an accounting, and the appellant having answered
that complaint, under section 7–704, I. C. A., the trial court
could grant her any relief consistent with the case made by
the supplemental complaint and embraced within the issues.
(See *Dover Lumber Co. v. Case,* 31 Ida. 276, 170 Pac. 108;
*Schlieff v. Bistline,* 52 Ida. 353, 16 Pac. (2d) 726.)

And upon the same ground, to wit, that "it is the
duty of a party to an action to quiet title to real property to
set forth every title or interest he has and after entry of the
decree he is barred from asserting any title or interest which
could have been asserted in that action," it is also contended
by appellant that the respondent's supplemental complaint
does not state facts sufficient to constitute a cause of action.
But, as just stated, respondent, by her supplemental com-
plaint, was not seeking to establish an interest in, or claim to,
the *property,* she merely sought an accounting. And, while
some matters in no way material to an accounting are alleged
in the supplemental complaint, it does allege sufficient facts
to constitute a cause of action for an accounting.

We turn now to the contention of appellant that
the accounting respondent sought in the court below was actu-
ally had in the suit it commenced in the federal court for the
strict foreclosure of respondent's equity of redemption, by
which we understand appellant to contend that the matter was
adjudicated in that suit. While it was shown by appellant,
in its affidavit in opposition to the motion of respondent for
an accounting, that June 23, 1931, appellant filed a bill of
complaint in the federal court for the strict foreclosure of the
equity of redemption of respondent, and that respondent
answered that complaint, appellant did not plead *res judicata*
in its answer to respondent's supplemental complaint. More-
over, there is nothing in the record before us showing that
a decree was ever entered by the federal court in said last-
mentioned foreclosure suit. The defense of *res judicata* must
be pleaded in the lower court, or it must appear either upon

the face of the record, or by extrinsic evidence, that the precise question was raised and determined in a former suit between the same parties, by a court of competent jurisdiction. (*Jensen v. Berry & Ball Co.*, 37 Ida. 394, 216 Pac. 1033.) The question cannot be raised for the first time on appeal.

The judgment of the trial court is affirmed except as to that part thereof reading as follows: "that execution may issue in favor of the plaintiff and against the defendant, Davidson Grocery Company, a corporation for the payment of this judgment without recourse to the sale of the property hereinafter described."

Costs awarded to respondent.

Budge and Givens, JJ., concur.

Morgan, C. J., dissents.

Ailshie, J., did not participate in the consideration of this case.

Petition for rehearing denied.