**CITY OF FARGO, CASS COUNTY, North Dakota, a Municipal Corporation, Plaintiff and Appellant,**

v.

**STATE of North Dakota and North Dakota State University of Agriculture and Applied Science, Defendants and Appellees.**

**Civ. No. 9356.**

Supreme Court of North Dakota.

Nov. 10, 1977.

As Modified on Denial of Rehearing Dec. 2, 1977.

Solberg, Stewart & Boulger, Fargo, for plaintiff and appellant; argued by Wayne O. Solberg, Fargo.

Richard B. Crockett, Special Asst. Atty. Gen., Fargo, for defendants and appellees.

SAND, Justice.

The City of Fargo appealed from a judgment rendered by the district court of Cass County in favor of the State of North Dakota and the North Dakota State University of Agriculture and Applied Science (hereinafter NDSU).

The subject of dispute involves unpaid special assessments.

The City of Fargo undertook the construction of a grade separation at the intersection of Second Street and the Burlington Northern Railroad tracks near the intersection of Second Street and Main Avenue, and in furtherance thereof and as permitted by law created a special improvement district, which included the property owned by the State and NDSU. The grade separation project is not contiguous or adjacent to the property of the State and NDSU.

It is agreed by all parties that the City of Fargo met and followed all statutory proceedings and appropriate laws relating to the creation of the special improvement district, the determination and levy of special assessments, the awarding of bids, and the issuance of improvement warrants.

When the various hearings were being held concerning the project, the assessment

of benefits, etc., neither the State nor NDSU appeared to protest, nor was a protest filed by either one at a later date.

The special assessment commission determined the NDSU property was benefited to the extent of $117,592.70, which became due on the 1st day of January, 1970. This amount remains unpaid with interest at the rate of 6.5%.

The parties stipulated and agreed in the trial court that the prayer for relief be amended to read as follows:

"WHEREFORE, Plaintiff prays for judgment against the defendants requiring payment, from funds appropriated, to the plaintiff in the amount of $117,592.70, plus interest at the rate of 6.5% from and after the 1st day of January, 1970."

They also stipulated that:

" . . . the only issues for determination by this Court [trial court] are as follows:

a. Whether or not Section 40–23–22, N.D.C.C. has been superseded by the appropriation bills as adopted by the Legislative Sessions of 1973 and 1975

. . . .

b. Whether or not the State of North Dakota and/or North Dakota State University as an agency of the state are obligated to pay the special assessments levied in connection with Special Improvement District No. 3207. [This is the number given to the special improvement district in question.]"

The judgment of the trial court provided that § 40–23–22, NDCC, did not constitute an appropriation and was superseded by the language in the 1971, 1973, and 1975 appropriations. The judgment further provided that the "legislative intent" stated separately in the appropriations, as quoted infra, does not constitute an appropriation to pay the special assessments, and dismissed the complaint against the State of North Dakota and NDSU. The City of Fargo appealed to this Court.

On appeal, the City of Fargo and NDSU each stated the issues differently, and different from the stipulation in the trial court, but because we recognize the basic issues as stated in the trial court to be the pertinent issues we address ourselves to them.

A brief review of the pertinent statutory provisions and appropriation bills will be helpful in more fully understanding our resolution of the issues considered.

Section 40–23–22, NDCC, enacted in 1959, was in full force and effect at all times pertinent to this case and provides as follows:

"Real estate within municipalities of this state owned by the state of North Dakota other than for highway right-of-way purposes, may be subjected to special assessments for special improvements when benefited by such improvement and the state agency or department having control thereof is hereby authorized to expend public funds in payment of such special assessments."

Chapter 22, § 6, of the 1973 Session Laws, Chapter 1, § 5, of the 1975 Session Laws, and Chapter 24, § 5, of the 1977 Session Laws, all containing appropriations for NDSU, provided:

"It is the intent of the Legislative assembly that the colleges and universities pay special assessments from their plant improvement monies. Notwithstanding the provisions of section 40–23–22, no funds shall be expended to pay special assessments on projects that do not directly serve a state institution and are not located on or contiguous to a state institution, wherever located in the state."

(For convenience, we will refer to this provision as the "legislative intent" unless otherwise specifically indicated.)

Chapter 1 of the 1971 Session Laws restricted the appropriation for NDSU, as follows:

```
"Land, structures and major
improvements:  Heating plant
and plant improvements (No
plant improvement funds
authorized for payment of
special assessments)        $ 956,000.00"
```

Although Chapter 1 of the 1971 Session Laws includes all of the institutions of higher learning, of which some were given an appropriation for special assessments, the restrictive language referred to is not found under the subdivisions involving appropriations for other institutions.

Chapter 1 of the 1969 Session Laws, setting forth the appropriations for all of the institutions of higher learning, contained the following under the appropriation for NDSU:

```
"Land, structures and
major improvements:
Plant improvements        $ 400,000.00"
```

No restrictions or limitations on the plant improvement fund as to special assessment payments were contained in the NDSU 1969 appropriation. However, Chapter 1, 1969 S.L., provided for special assessments for several institutions of higher learning, but none for NDSU.

Unless otherwise specifically provided, appropriations are available for a two-year period beginning July 1 following the legislative session (e.g., the appropriation made by the 1969 legislative assembly became available July 1, 1969, and extended up to July 1, 1971).

We will first determine whether or not § 40–23–22, NDCC, constitutes an appropriation of funds for the payment of special assessments.

Section 186 of the North Dakota Constitution, as is pertinent to the question involved here, provides:

"All public moneys . . . shall be paid out and disbursed only pursuant to appropriation first made by the Legislature . . . ."

The constitutional provision continues by providing for standing appropriations for certain transactions and activities of state departments and agencies, and specifically provides that its provisions shall not apply to certain fees and moneys received in connection with the licensing of certain profes-

sions. However, none of the additional provisions or exceptions can be construed to apply to the appropriations made to the state institutions, including NDSU.

In *Menz v. Coyle*, 117 N.W.2d 290, 302 (N.D.1962), this Court concluded:

" . . . that an 'appropriation,' as the word is used in Section 186 of the Constitution, is the setting apart of a definite sum for a specific object in such a way that the public officials can use the amount appropriated, and no more than the amount appropriated. *Campbell v. Towner County*, 71 N.D. 616, 3 N.W.2d 822."

See also, *State v. Holmes*, 19 N.D. 286, 123 N.W. 884 (1909).

We are not aware of any cases, and none have been called to our attention, in the State of North Dakota which depart from the foregoing concept.

The argument of the City of Fargo that § 40–23–22, NDCC, constitutes an appropriation would have greater validity if it were a constitutional provision. If it were, the concepts expressed in *State ex rel. Byrne v. Baker*, 65 N.D. 190, 262 N.W. 183 (1934), would apply where the Court recognized the constitutional duty of the Secretary of State to publish the publicity pamphlet as constituting an appropriation to accomplish the constitutional mandate, even though no legislative appropriation had been made. Similarly, what this Court said in *State ex rel. Walker v. Link*, 232 N.W.2d 823 (N.D. 1975), with reference to funding a constitutionally mandated function would also apply. However, § 40–23–22, NDCC, is not a constitutional provision. It is a statutory provision merely authorizing the expenditure of public funds to pay for special assessments levied on state-owned property which is benefited by the improvement.

Section 40–23–22, NDCC, was enacted by Chapter 380 of the 1959 Session Laws. The title of the Act (Ch. 380, S.L. 1959) states "To provide for the levy of special assessments on certain state property." Significantly, no reference is made in the title or body of the Act which in any manner can be construed as constituting an appropria-

tion, either by implication or otherwise. By comparison, in those Acts which are definitely appropriation Acts or contain a specific appropriation the title usually provides in the following manner: "Making an appropriation for[1] . . . " even though other items are mentioned in the title. Such provision is notably lacking in the title of Chapter 380, 1959 Session Laws, which enacted § 40–23–22, NDCC, the statute in question. This has significance because § 61 of the North Dakota Constitution provides that no bill shall embrace more than one subject, which shall be expressed in its title.

Very few state agencies or departments are legally capable of generating funds to pay for special assessments. The great majority are dependent upon appropriations by the Legislature for all expenditures. We must assume the Legislature was aware that NDSU did not have any funds, other than those appropriated, for the payment of special assessments and that § 40–23–22, NDCC, does not set apart a definite fund for a specific object, nor does it meet the requirements set out in *Menz, supra.*

Case law from other states having different constitutional provisions is not persuasive or helpful to the situation under consideration here.

We conclude that § 40–23–22, NDCC, is merely an authorization to levy special assessments on state-owned property and expend public funds to pay for special assessments; but it is not an appropriation.

▇▇▇▇ We now consider whether or not the language of intent in appropriation bills adopted by the legislative session of 1971, 1973, and 1975 make an exception to § 40–23–22, NDCC.

We find nothing in the North Dakota Constitution which would lead us to believe that appropriation bills, measures, or enactments are inferior to other bills, measures, or enactments not containing an appropriation. Both must meet the basic constitutional requirements and the procedural

steps, including approval of both Houses, and approval by the Governor. The slight difference that exists imposes a greater restriction and requirement upon appropriation enactments than on other enactments, such as found in §§ 60 and 62 of the North Dakota Constitution.

One distinction between appropriation and other enactments is that the appropriation enactments, unless otherwise specifically provided, are limited to the two-year period, referred to as a biennium; whereas other enactments usually do not have the two-year limitation, but continue until repealed or amended.

Except as noted above, all legislative enactments have equal standing and are subject to the provisions of §§ 1–02–07, 1–02–09, and 1–02–10, NDCC, and to the general rule that if an irreconcilable conflict exists between two statutes, the one which is enacted later will prevail.

When two statutes relating to the same subject matter appear to be in conflict, they should whenever possible be construed to give effect to both statutes if this can be done without doing violence to either. *In re Weisser Finance Co.*, 169 N.W.2d 420 (N.D.1969).

If an irreconcilable conflict exists, the latest enactment will control or will be regarded as an exception to or as a qualification of the prior statute. *State v. Loucks*, 209 N.W.2d 772, 777 (N.D.1973); 82 C.J.S. *Statutes* § 368, p. 838.

Chapter 1 of the 1969 Session Laws contained several separate line items for special assessments for other institutions of higher learning, but none for NDSU. We must also take note that Chapter 1 of the 1971 Session Laws contained a number of separate line items for several institutions of higher learning entitled "Special assessments." However, we found no such line item in the NDSU appropriation; instead, it contained the language, "(No plant improvement funds authorized for payment of special assessments)."

---

1. "Rules and Suggestions for Drafting Bills and Resolutions," as put out by the North Dakota

Legislative Council, states that "An appropriation must be noted in the title of the bill."

In 1973 the Legislature began setting forth its "legislative intent" (quoted *infra*) in the appropriation bills which applied to all institutions of higher learning and discontinued making separate line item appropriations for special assessments.

From the foregoing, we are compelled to conclude that no appropriations for special assessments were made in Chapter 1 of the 1969 appropriation Act and that the provisions found in the appropriation Acts respectively for 1971, 1973, 1975, and 1977, as pertaining to NDSU make no appropriations for special assessments and effectively constitute an exception to § 40–23–22, NDCC, for the years covered by the appropriation Acts.

The City of Fargo also contends and argues that the following underscored language (the "legislative intent") as appearing in the appropriation bills for 1973, 1975 and 1977 constitutes an appropriation to pay the special assessments.

> "It is the intent of the Legislative Assembly that the colleges and universities pay special assessments from their plant improvement moneys. Notwithstanding the provisions of section 40–23–22, no funds shall be expended to pay special assessments on projects that do not directly serve a state institution and are not located on or contiguous to a state institution, wherever located in the state." [Underscoring ours.]

Statutes must be construed as a whole to determine the intent of the Legislature. *Horst v. Guy*, 219 N.W.2d 153 (N.D.1974); *State v. Hagge*, 211 N.W.2d 395 (N.D.1973); *Patterson v. City of Bismarck*, 188 N.W.2d 734 (N.D.1971). The intent must be derived from the whole statute and of every part thereof taken and compared together. *Beck v. Workmen's Compensation Bureau*, 141 N.W.2d 784 (N.D.1966).

Under this rule of law, we may not resort merely to the first sentence of a section without taking into account and recognizing the other provisions of the same section in determining the intent of the Legislature.

If the first sentence is to be employed, it necessarily follows that the remainder of the section must also be recognized and given full effect. If there is a conflict between the first sentence and the last sentence, § 1–02–08, NDCC, would apply, which, in effect, states that the last clause in order of position shall prevail if there is an irreconcilable conflict. This would also apply to a sentence.

We have not found, nor were any reasons provided to us, which account for the language "(No plant improvement funds authorized for payment of special assessments)" in the 1971 appropriation or the "statement of intent" as found in the subsequent appropriation bills quoted above. However, during oral argument the information was brought out that the State participated in this project as stated in the agreement later referred to herein.

Pursuant to § 31–10–02(41), NDCC, we may take judicial notice of the acts of public officers. *State v. Gronlie*, 213 N.W.2d 874 (N.D.1973). The acts and records of the highway department are acts of public officers. See also *Reiss v. Rummel*, 232 N.W.2d 40, 43 (N.D.1975), as to taking judicial notice of factors which might have influenced the Legislature.

The public records of the Highway Department disclose that in February 1970 an agreement was entered into by the City of Fargo, Kirkham Michael and Associates, Consulting Engineers, and the State of North Dakota acting through its Highway Commissioner, in which the State of North Dakota limited its financial participation in the project. The agreement described the project and the map attached thereto identified the project as the one under consideration here and was made a part of the agreement. The agreement, in part and as is pertinent to this question, provides:

> "The State's total participating share in the cost of the project will be limited to and shall not exceed $230,000.00."

Without attempting to determine the Legislature's motive, we nevertheless reach the conclusion that the underscored language in the section entitled "Legislative

Intent," quoted supra, as found in the appropriation bills, when considered as a whole with the remaining portion of the section, which we must, does not constitute an appropriation for the payment of special assessments.

We now consider the question whether or not the State of North Dakota or NDSU, or both, are obligated to pay the assessments levied in connection with the special improvement project.

The language in the appropriation bills discussed earlier herein did not expressly provide for retroactive application and therefore, pursuant to § 1–02–10, NDCC, it applies only prospectively.

Technically, § 40–23–22, NDCC, up until 1 July 1971 was wholly operative and as a result the property of NDSU (State of North Dakota) prior to that time was subject to special assessment levies provided the property was benefited by the special improvement. Whether the property was benefited by the special improvement is not raised here and is not being considered.

The resulting levy in the amount of $117,-592.70, plus interest at the rate of 6.5%, therefore must be deemed procedurally valid. But this does not resolve the problem. We must recognize that neither NDSU nor the State of North Dakota has any funds to pay special assessments without first obtaining an appropriation from the Legislature. If the Legislature refuses to appropriate funds to pay the special assessment we are not aware of any constitutional method whereby the Legislature can be compelled to make the appropriation. We must and do recognize the separate, but co-equal branches of government.

We cannot overlook or disregard the agreement of February 1970. If that agreement was intended to limit the State's participation in the special improvement project to the amount of $230,000.00, then the State has met its obligation. We conclude that the expression, "the State's total participating share . . ." in the agreement not only refers to the State but also includes NDSU, which is an extension of the State of North Dakota. The City of Fargo, as a signatory to the agreement, must be considered fully knowledgeable of its contents and must be bound by its provisions.

Relying solely upon the February 1970 agreement, and the statements and legislative intent found in the appropriation bills, we conclude that the State has met its financial obligation on the special improvement project in question. This, however, does not prevent the Legislature from making further contributions to the special improvement project to the extent it deems appropriate.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.