**STATE of North Dakota by the WORK-MEN'S COMPENSATION BUREAU, Appellee,**

v.

**Thomas J. CLARY, Appellant.**

**Civ. No. 11124.**

Supreme Court of North Dakota.

June 6, 1986.

Clare R. Hochhalter, Asst. Atty. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, for appellee; argued by Clare R. Hochhalter.

Lee Hagen Law Office, Fargo, for appellant; argued by Leland F. Hagen.

ERICKSTAD, Chief Justice.

Thomas Clary appeals from the district court judgment granting the North Dakota Workmen's Compensation Bureau's motion for summary judgment. We affirm.

The facts in this case are simple and not in dispute. Clary sustained work related injuries on September 24, 1982. As a result of these injuries, Clary received benefits in the amount of $30,436.92 from the North Dakota Workmen's Compensation Fund. Clary then brought an action for damages against a third party, Western Steel Erectors. The case proceeded to trial and a jury determined that Clary had sustained damages in the amount of $120,000. The jury apportioned the negligence in the case, finding Western Steel Erectors 60 percent at fault, Twin City Construction Company, Clary's employer, 15 percent at fault, and Clary 25 percent at fault. As a

result of this apportioned negligence, the damages recovered by Clary totalled $97,667 ($120,000 less Clary's 25 percent negligence, plus other costs and fees).

A dispute arose between Clary and the Bureau regarding the Bureau's subrogation interest pursuant to Section 65–01–09, N.D.C.C., which provides in pertinent part:

"The fund shall be subrogated to the rights of the injured employee or his dependents to the extent of fifty percent of the damages recovered up to a maximum of the total amount it has paid or would otherwise pay in the future in compensation and benefits for the injured employee. The bureau's subrogation interest may not be reduced by settlement, compromise, or judgment."

The Bureau computed its total subrogation interest of the third-party recovery to be $48,833.50, 50 percent of the total damages recovered by Clary from Western Steel Erectors.[1] Clary contested this computation, arguing that the 25 percent negligence of Clary should be used to reduce the Bureau's subrogation interest by 25 percent. It should be noted that the Bureau's subrogation interest is based on the damages recovered by Clary which have been reduced from total damages sustained by 25 percent because of the negligence assigned to Clary. Nonetheless, Clary argues that the Bureau's subrogation interest should be reduced an additional 25 percent from Clary's reduced damage recovery.[2]

The sole issue presented for review to the district court was whether the Bureau's or Clary's computation of the Bureau's subrogation interest was in accordance with 65–01–09, N.D.C.C. After receiving motions from both parties, the district court entered summary judgment in favor of the Bureau. Clary has appealed this judgment and the issue on appeal is whether or not this judgment is in accordance with 65–01–09.

We have recently had the opportunity to review the Workmen's Compensation Bureau's subrogation rights as provided by 65–01–09. *See, Blaskowski v. North Dakota Workmen's Comp.*, 380 N.W.2d 333 (N.D.1986). In *Blaskowski* the claimant argued that Section 65–01–09 should be construed to prohibit the Bureau from suspending future benefits when the Bureau has already been reimbursed for past benefits paid. We concluded:

"To construe Section 65–01–09 so as to prevent the Bureau from suspending future benefits would hinder the Bureau's efforts to enforce its subrogation rights and would be contrary to the intent of the Legislature." 380 N.W.2d at 336.

The Bureau has had subrogation rights since the North Dakota Workmen's Compensation Fund was established in 1919. 1919 N.D.Sess.Laws, Ch. 162, § 20. The purpose of the Bureau's subrogation rights is to reimburse the fund, to the extent possible, at the expense of the persons at fault. *Blaskowski*, 380 N.W.2d at 335. In

---

1. The Bureau calculated its subrogation interest in the third-party action in the Thomas Clary claim as follows:

"Total Third Party Recovery ............... $97.667.00
Costs in Third Party Recovery ............. $ 4,299.00

Bureau's Subrogated Interest in Third Party Recovery:
Suspended Benefits ............ $18,396.58
Expended Benefits ............. $ 3,436.92
Bureau's Total Subrogated Interest ....... $48,833.50

Net Amount of Suspended Benefits:
Total Suspended Benefits ...... $18,396.58
Less Bureau's attorney's fees ... $ 6,132.19
Less Bureau's costs ............ $ 809.93
Net Suspended Benefits .................. $11,454.46

Net Reimbursement to Bureau for Expended Benefits:
Total Expended Benefits ........ $ 3,436.92
Less Bureau's attorney's fees ... $10,145.64
Less Bureau's costs ............ $ 1,339.57
Reimbursement to Bureau ............... $18,951.71"

2. Clary has not provided any specific calculations concerning this 25 percent reduction. Apparently Clary believes that this 25 percent reduction should be made after the Bureau calculates its subrogation interest. It should be noted that the Bureau's net subrogation interest could vary depending upon which step in the computations the 25 percent reduction is made. However, as we believe that the Bureau's method of calculating its subrogation interest is in accordance with 65–01–09, it is not important to our decision to know at which step in the computations Clary believes the 25 percent reduction should be made.

*Blaskowski,* we noted the following legislative change concerning the Bureau's subrogation rights:

"In 1965 the Legislature reduced the Bureau's right to subrogation of third-party recoveries from one-hundred percent to fifty percent.... This change apparently was made to induce employees to bring actions against third parties who were at fault.... An obvious result of this change was that the Bureau received less subrogation from third-party recoveries. The Bureau responded to this decreased subrogation by adopting policies that more thoroughly protected the remainder of its subrogation interest." [Citations omitted.] 380 N.W.2d at 335.

■ Clary's first argument is that "the subrogation statute was impliedly amended by the adoption of the doctrine of comparative negligence set forth in *N.D. Cent. Code* § 9–10–07." [3] At the outset, we should note that repeals or amendments of statutes by implication are not favored and to overcome the presumption against an implied repeal or implied amendment it must be shown that conflict between the two statutes is irreconcilable. *Walsvik v. Brandel,* 298 N.W.2d 375, 377 (N.D.1980).

The comparative negligence statute was enacted to eliminate the inequities under the former contributory negligence act which denied a recovery if the plaintiff was contributorily negligent even as little as one percent. *Day v. General Motors Corp.,* 345 N.W.2d 349, 354 (N.D.1984). *Bartels v. City of Williston,* 276 N.W.2d 113, 120 (N.D.1979). Section 9–10–07 did not abolish the concept of contributory neg-

ligence, it only abolished the former result of contributory negligence—that a plaintiff's contributory negligence barred recovery of any damages. *Keller v. Vermeer Mfg. Co.,* 360 N.W.2d 502, 504 (N.D.1984). The bar to recovery was, in essence, shifted from one percent to 50 percent. *Day,* 345 N.W.2d at 354. Section 9–10–07, further provides that any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering. *Keller,* 360 N.W.2d at 505.

■ Clary argues that 9–10–07 and 65–01–09 are in conflict and that 9–10–07 should control since it was enacted after 65–01–09. When two statutes relating to the same subject matter appear to be in conflict, they should be construed to give effect to both statutes if this can be done without doing violence to either. *City of Fargo, Cass Cty. v. State,* 260 N.W.2d 333, 338 (N.D.1977). If an irreconcilable conflict exists, the latest enactment will control or will be regarded as an exception to or as a qualification of the prior statute. *City of Fargo,* 260 N.W.2d at 338. On the other hand, where the terms of a statute are positive and unambiguous, exceptions not made by the Legislative Assembly cannot be read into the law. *Walsvik v. Brandel,* 298 N.W.2d at 377.

Clary would have us analyze our decisions which have discussed the effects that 9–10–07 has had on North Dakota negligence law and apply these decisions to 65–01–09, or use these decisions to provide "a sense of direction" in our interpretation of 65–01–09. *See, Hoerr v. Northfield*

---

**3.** Section 9–10–07, N.D.C.C., enacted by the Legislature in 1973, reads:

"*Comparative negligence.*—Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount

of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each; provided, however, that each shall remain jointly and severally liable for the whole award. Upon the request of any party, this section shall be read by the court to the jury and the attorneys representing the parties may comment to the jury regarding this section."

*Foundry and Mach. Co.,* 376 N.W.2d 323 (N.D.1985); *Day v. General Motors Corp.,* 345 N.W.2d 349; *Layman v. Braunschweigische Maschinenbauanstalt,* 343 N.W.2d 334 (N.D.1983); *Ness v. St. Aloisius Hospital,* 313 N.W.2d 781 (N.D.1981); *Bartels v. City of Williston,* 276 N.W.2d 113. We do not believe these decisions should influence our interpretation of 65–01–09, however, because we do not believe that a conflict exists between 9–10–07 and 65–01–09.

The Workmen's Compensation Act emphasizes that it is independent of, and a substitute for, other forms of relief for injury and death to an employee. Section 65–01–01, N.D.C.C. provides that when the Workmen's Compensation Act is applicable,

"all civil actions and civil claims for relief for such personal injuries and all jurisdiction of the courts of the state over such causes are abolished except as is otherwise provided in this title."

Section 65–01–08 provides in pertinent part: "Where a local or out-of-state employer has secured the payment of compensation to his employees by contributing premiums to the fund, the employee ... [shall] have no claim for relief against such contributing employer ... for damages for personal injuries, but shall look solely to the fund for compensation."

In addition, Section 65–04–28, N.D.C.C., provides:

"Employers who comply with the provisions of this chapter *shall not be liable to respond in damages at common law or by statute* for injury to or death of any employee, wherever occurring, during the period covered by the premiums paid into the fund." [Emphasis added.]

Also, Section 65–05–06 states:

"The payment of compensation or other benefits by the bureau to an injured employee, or to his dependents in case death has ensued, *are in lieu of any and all claims for relief whatsoever against the employer of the injured or deceased employee.*" [Emphasis added.]

*See* also, *Gernand v. Ost Services, Inc.,* 298 N.W.2d 500, 505 (N.D.1980).

■ We said in *Layman v. Braunschweigische Maschinenbauanstalt,* 343 N.W.2d at 344, "that the exclusive remedy provisions of our workmen's compensation statutes operate to foreclose an employer's liability for contribution to a third-party tort-feasor." While *Layman* concerned contribution to a third-party tort-feasor, which is not an issue in the case at hand, it does support the same general rule, as do the statutes above, that the Workmen's Compensation Act is a distinct body of law separate from common law and other statutory tort-law provisions. *See,* Section 65–04–28, N.D.C.C. We also note that we find nothing, and Clary has directed us to nothing, in the legislative history, or elsewhere, that would suggest that the legislature intended 9–10–07 to have amended 65–01–09. We believe that had the legislature intended the Workmen's Compensation Act to be amended when it adopted comparative negligence it would have done so expressly.[4] Accordingly, we conclude that the comparative negligence statute, 9–10–07, has not impliedly amended 65–01–09.[5]

We recognize that we have found statutes to have been impliedly repealed by the passage of 9–10–07. *See, Bartels v. City of Williston,* 276 N.W.2d 113. *Bartels,* however, involved the effect that 9–10–07 had on other tort-law provisions in North Dakota law. It does not control Section 65–01–09 because of the independent nature of the Workmen's Compensation Act.

Clary next argues that "the term 'subrogated' should be interpreted in light of the

---

**4.** We noted in *Hoerr v. Northfield Foundry and Mach. Co.,* 376 N.W.2d 323, 334, n. 8 (N.D.1985) that the 49th Legislative Assembly passed a concurrent resolution "directing the Legislative Council to study the comparative negligence laws and their interaction with the products liability, strict liability, and workmen's compensation laws in light of recent North Dakota

Supreme Court decisions." *See,* 1985 N.D.Sess. Laws, Ch. 852.

**5.** As we have concluded that 9–10–07 has not impliedly amended 65–01–09 we need not address the issue of whether or not 9–10–07 would mandate the result advocated by Clary.

legal use and history of that term." Clary further argues that subrogation is an equitable doctrine and the principles of equity should be applied in construing the term. He argues that as his recovery has been reduced by the amount of his negligence the Bureau's right to recover from him should be reduced in the same amount. We do not question that subrogation is generally an equitable doctrine. However, the subrogation rights of the Bureau are statutory, and equitable concepts are, therefore, not controlling. The word subrogation should be construed in light of the context in which it is used in the statute. To apply the principles of equity to the Bureau's subrogation rights, as urged by Clary, would blur the meaning of the statute which is otherwise clear on its face. Equity follows the letter and spirit of the law and courts of equity are bound by and must follow and apply the principles of substantive law. *Schwarting v. Schwarting*, 354 N.W.2d 706, 708 (N.D.1984); *Langenes v. Bullinger*, 328 N.W.2d 241, 246 (N.D.1982). The principles of equity are deemed to be a part of the common law in this country. 15A Am.Jur.2d *Common Law* § 9 (1976). As common law encompasses equity, and as "there is no common law in any case where the law is declared by the code," Section 1–01–06, N.D.C.C., equity does not apply where the law is declared by statute.

We believe that 65–01–09 is clear when it states that the Bureau's subrogation rights apply "to the extent of fifty percent of the damages recovered." The damages recovered by Clary amount to $97,667. The Bureau's subrogation interest extends to 50 percent of this recovery, ($48,833.50). *See*, footnote 1. We recognize that equity may support Clary's contention that the subrogation interest of the Bureau should be reduced by the percentage of negligence assigned to the employee by a jury in a trial against a third-party tort-feasor. The statute, however, does not provide for such a reduction. As we have previously held that changes in the workmen's compensation statutes are appropriately left to the legislature, it is proper and

consistent that we adhere to that view in this case. *Layman*, 343 N.W.2d at 345; *Gernand v. Ost Services, Inc.*, 298 N.W.2d at 505; *Sayler v. Holstrom*, 239 N.W.2d 276, 283 (N.D.1976). Any other approach would confuse the trial bench which has a difficult enough task in following our opinions when we are consistent. The need for consistency is equally important in connection with guidance to administrative agencies.

Finally, Clary argues that the Bureau's subrogation interest is modified by the phrases "to the extent of fifty percent of the damages recovered" and "up to a maximum of the total amount it has paid or would otherwise pay in the future in compensation and benefits for the injured employee." Clary contends that these phrases neither set the minimum amount of recovery by the fund, nor establish a universal formula for determining the exact amount of the subrogated interest. We have stated previously in this opinion that we find the former of these two phrases to be clear on its face. We do not believe further discussion is necessary. The latter of these two phrases was recently addressed in *Blaskowski v. North Dakota Workmen's Comp.*, 380 N.W.2d 333. In *Blaskowski*, the Bureau presented a mathematical formula from which it could determine precisely the Bureau's subrogation interest for benefits already expended and for possible future benefits. This same formula has been applied to the case at hand and used to calculate the exact amount of the Bureau's subrogation interest. While the mathematical formula used by the Bureau is not explicitly mandated by the statute, it is consistent with the purpose and intent of the statute. *Blaskowski*, 380 N.W.2d at 336. For this reason, we believe our holding in *Blaskowski*, adequately disposes of this argument.

For the reasons stated herein, we affirm the judgment of the district court.

VANDE WALLE, J., concurs.

LEVINE, MESCHKE and GIERKE, JJ., concur in the result.