Dorothy A. WAITH, Frances Riskey, Gloria Rhoads, Margaret Kiel, Claimants and Appellants,

and

Jackie Souder, Ethel Kouba, Sylvia Linstad, Diane Brenno, Glenice Friebohl, Judy Hegg, Vedrenia Kruse, and Janice Miller, Claimants,

v.

NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Respondent and Appellee.

Civ. No. 11426.

Supreme Court of North Dakota.

June 24, 1987.

Nelson, Kalash & Molenaar, Grand Forks, for claimant and appellant Dorothy A. Waith. No Appearance.

Cynthia Tredwell, Third-Year Law Student (argued) and Marjorie M. Young, of Degnan, McElroy, Lamb, Camrud, Maddock & Olson, Grand Forks, for claimants and appellants Frances Riskey, Gloria Rhoads and Margaret Kiel.

Clare Hochhalter (argued) and Dean J. Haas, Asst. Attys. Gen., North Dakota Workmen's Compensation Bureau, Bismarck, for respondent and appellee.

VANDE WALLE, Justice.

The plaintiffs (claimants) appealed from a district court judgment upholding a determination by the North Dakota Workmen's Compensation Bureau (the Bureau) regarding the Bureau's subrogation rights against the claimants. We affirm.

On May 15, 1984, the claimants were injured in a two-vehicle collision involving a Central Valley School District (Central) bus and a University of North Dakota (UND) van. At the time this accident occurred the claimants were employed by UND as food-service workers and were returning to Grand Forks in the van from a food service workshop which was within the scope of their employment with UND.

The claimants filed an action against Central. The claimants also employed an attorney to determine on an individual and total basis the general and special damages incurred by them. He determined that the damages incurred by the claimants totaled $704,757. However, Central, a political subdivision, was subject to a maximum statutory liability limit of $500,000 under the provisions of Section 32–12.1–03, N.D. C.C. For that reason the parties entered into a stipulated agreement regarding liability and damages upon which the district court entered an order holding Central liable to the claimants for total damages of $495,338.01. The order further provided that the disbursement of funds was to be prorated among the claimants in accordance with the attorney's assessment of the damages incurred by each claimant. It is undisputed that the damage award approved by the court resulted in the claimants' receiving approximately 68 percent of the total damages actually incurred by them. The parties also agree that the claimants agreed to accept an award of partial damages, rather than litigating for full damages, because of the $500,000 statutory limitation upon Central's liability.

As a result of the injuries sustained in the collision the claimants received benefits from the Bureau. Following the claimants' recovery of damages against Central, the Bureau determined that it was entitled to reimbursement of benefits from the claimants of an amount up to 50 percent of the damages recovered by the claimants from Central. The claimants appealed the Bureau's determination to the district court, asserting that the Bureau's reimbursement should be reduced to 68 percent of the benefits disbursed by the Bureau to the claimants, reflecting the percentage recovery by the claimants against Central of the total damages incurred by them. The district court entered an order upholding the

Bureau's determination from which the claimants have filed this appeal.

The sole issue on appeal is whether the Bureau should receive a prorated subrogation interest when a benefit recipient recovers against a third-party tortfeasor less than the total damages sustained by the recipient because the tortfeasor is protected by a statutory maximum liability limit.

The Bureau's subrogation rights are authorized by Section 65–01–09, N.D.C.C., which provides in relevant part:

"The fund shall be subrogated to the rights of the injured employee or his dependents *to the extent of fifty percent of the damages recovered* up to a maximum of the total amount it has paid or would otherwise pay in the future in compensation and benefits for the injured employee. The bureau's subrogation interest may not be reduced by settlement, compromise, or judgment." [Emphasis added.]

The Bureau determined that in accordance with the foregoing statutory provision it was entitled to reimbursement of all benefits paid by it to the claimants up to 50 percent of the damages recovered by the claimants from Central. The claimants assert that because the $495,338.01 recovery for damage represented 68 percent of the total damage sustained by them, the Bureau is entitled to reimbursement for only 68 percent of the benefits it paid to the claimants up to a maximum reimbursement of 68 percent of 50 percent of the $495,338.01 recovery. In effect, the claimants contend that the Bureau's subrogation interest must be proportionately reduced to the same percentage as is representative of the claimants' recovered damages to the total damage incurred.

We believe the disposition of this case is controlled by the rationale of our decisions in *State by Workmen's Compensation Bureau v. Clary*, 389 N.W.2d 347 (N.D.1986), and *Kelsh v. North Dakota Workmen's Compensation Bureau*, 388 N.W.2d 870 (N.D.1986), which support the Bureau's determination. In both of those cases the benefit recipients asserted that the Bureau's subrogation interest against the recipients' recovery of damages from a third-party tortfeasor should be reduced by the percentage of negligence attributed to the recipients which resulted in a corresponding reduction of damages recovered. We noted in those decisions that when the damages recovered by a recipient are reduced by the percentage of negligence attributable to the recipient, the Bureau's reimbursement, which is based upon damages recovered, is correspondingly reduced. We rejected, however, the contention that the plain meaning of Section 65–01–09, N.D.C.C., required or permitted a further reduction of the Bureau's subrogation interest under such circumstances.

The claimants assert that this case is distinguishable from the facts in *Clary* and *Kelsh* because in this case the claimants received a reduced recovery through application of a statutory liability limit protecting the defendant whereas the reduced recoveries in those cases were attributable to the recipients' contributory negligence. While the factual distinction is correctly stated by the claimants, we do not agree that the distinction requires a different application of Section 65–01–09, N.D.C.C., or a different result in this case. As we indicated in *Clary*, the statute unambiguously provides that the Bureau's subrogation rights apply "to the extent of fifty percent of the damages recovered." The provision neither permits nor requires the Bureau's subrogation interest to be further reduced when the recipient's recovery from the third-party tortfeasor does not constitute a total recovery of the damages sustained by the recipient. The reason that a recipient secures only a partial recovery against the third-party tortfeasor is immaterial to the application of the Bureau's subrogation rights under Section 65–01–09, N.D.C.C.

The concurring opinion criticizes the use of the term "rights" when referring to the subrogation interest of the Bureau. The statutes, as the concurring opinion notes, use the term "interest" but we, several years ago, characterized the subrogation "interests" of the Bureau as "rights." E.g., *Ness v. St. Aloisius Hospital*, 313 N.W.2d 781 (N.D.1981). More significant-

ly, however, the concurring opinion suggests that by the use of the term "subrogation" the Legislature intended to incorporate an entire panoply of equitable principles. For the most part the quotations taken from the cases cited in the concurring opinion refer to the common-law equitable doctrine of subrogation. But there is nothing in our past decisions which support that concept. To the contrary, this court long ago indicated that the rights conferred on employers and employees under workmen's compensation statutes are purely statutory and that while the provisions of the Act are to be construed liberally in favor of the worker, the intent of the statute must be carried out. E.g., *Breitwieser v. State*, 62 N.W.2d 900 (N.D.1954).

In construing the subrogation clause of what is now Section 65–01–09, N.D.C.C., this court, in 1928, stated:

"If compensation is claimed and awarded, the North Dakota workmen's compensation fund is subrogated to the rights of the injured employee or his dependents to recover against that person. The statute is not ambiguous. It does not say that the workmen's compensation fund shall have the right to recover, it does not extend the right to both parties, but it says the workmen's compensation fund shall be subrogated to the rights of the injured employee, and it follows that all the rights which the injured employee had to bring such action are in law conveyed to the workmen's compensation fund. 'Subrogation in its broadest sense is the substitution of one person in place of another with reference to a lawful claim of right.' 25 R.C.L. 1311." *Tandsetter v. Oscarson*, 56 N.D. 392, 217 N.W. 660, 661 (1928).

Although the statute was amended to permit the employee or the Bureau to bring actions, there is no indication that the Legislature intended to alter the statutory concept of the Bureau's right of subrogation except as specifically provided therein. E.g., *Blaskowski v. North Dakota Workmen's Compensation Bureau*, 380 N.W.2d 333, 335 (N.D.1986) [In 1965 the Legislature reduced the Bureau's right to subrogation of third-party recoveries from one hundred percent to fifty percent apparently to induce employees to bring actions against third-parties who were at fault.] Thus this court in the past refused to restrict the Bureau's right to subrogation to instances where the employer is without fault; although recognizing that limitation upon subrogation would assure the employee full recovery of damages and conceivably promote justice, we concluded that such an approach is not for us to adopt but is one that should be submitted to the Legislature for its consideration. *Sayler v. Holstrom*, 239 N.W.2d 276 (N.D.1976).

The claimants rely upon the Montana Supreme Court decision in *Hall v. State Compensation Insurance Fund*, 708 P.2d 234 (Mont.1985), to support their position that the Bureau should receive a reduced subrogation interest under these circumstances. In *Hall* the Montana Supreme Court held that where a claimant is forced to settle for the limits of an insurance policy and the claimant does not thereby receive full legal redress for injuries sustained, the insurer who has provided worker's compensation benefits to the claimant is not entitled to subrogation. The Montana decision was based primarily upon the court's interpretation and application of a relevant provision in the Montana Constitution:

"... 1972 Mont. Const., art. II, § 16, provides in pertinent part:

" 'No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state ...'

"This section was interpreted in *White v. State* (Mont.1983), [203 Mont. 363], 661 P.2d 1272, 40 St.Rep. 507, as creating a fundamental right to full legal redress. Thus, to interpret the Workers' Compensation Act's subrogation statute, § 39–71–414, MCA, to allow the State Fund subrogation rights when the claimant has not achieved full legal redress would

be an unconstitutional application of an otherwise constitutional statute." 708 P.2d at 236.

But the foregoing rationale of the Montana Supreme Court is simply inapplicable to this case, because the North Dakota Constitution has no counterpart to the construed Montana provision. Furthermore, the Montana subrogation statute, Section 39–71–414, of the Montana Code Annotated, does not include language similar to Section 65–01–09, N.D.C.C., which provides that the Bureau's subrogation rights apply "to the extent of fifty percent of the damages recovered." That language constitutes a legislative decision in this State to limit the Bureau's subrogation interest to a maximum of one-half of the amount actually recovered by a benefit recipient against a third-party tortfeasor. Montana law does not provide the same limitation. As we stated in *Kelsh, supra,* the language of Section 65–01–09, N.D.C.C., does not "permit or require further reduction of the fund's interest ..."

The judgment of the district court upholding the Bureau's determination is affirmed.

ERICKSTAD, C.J., and GIERKE, J., concur.

LEVINE, J., concurs in the result.

MESCHKE, Justice, concurring.

I hesitantly concur in the result. I write separately to express my reservations.

I did not join in the opinion, but only concurred in the result, in *Clary,* 389 N.W.2d 347 (N.D.1986), because I was uneasy about the reach of its reasoning. I joined in the later decision in *Kelsh,* 388 N.W.2d 870 (N.D.1986), as controlled by the result in *Clary,* but my uneasiness about the *Clary* explanation has continued and is now acute.

*Clary, supra,* and this decision treat the Bureau's "subrogation interest" as an entitlement in every event. Thus, Justice VandeWalle characterizes it as "the Bureau's subrogation *rights*" at several points in his opinion. Compare that characterization to the more moderate term in the

statute itself identifying "[t]he bureau's subrogation *interest*." The statute does not say that "the fund shall be *entitled, ...*" but only says that "[t]he fund shall be *subrogated....*"

If the legislature had intended a right, I doubt that the equitable concept of subrogation would have been used in the statute. *See* N.D.C.C. § 1–02–02 ("Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, ...") and § 1–02–03 ("Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, ... shall be construed according to such peculiar and appropriate meaning or definition.")

Many decisions have described subrogation as an equitable doctrine, rather than as a right. Some examples: *Olin Corporation (Plastics Division) v. Workmen's Compensation Appeal Board,* 14 Pa. Cmwlth. 603, 324 A.2d 813, 816 (1974), ("The right of subrogation is based upon considerations of equity and good conscience...."); *Jenks Hatchery, Inc. v. Elliott,* 252 Or. 25, 448 P.2d 370, 373 (1968), ("Subrogation is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it."); *Federal Land Bank of Baltimore v. Joynes,* 179 Va. 394, 18 S.E.2d 917, 920 (1942), ("This doctrine is not dependent upon contract, nor upon privity between the parties; it is the creature of equity, and is founded upon principles of natural justice.... 'Subrogation not being a matter of strict right, but purely equitable in its nature, dependent upon the facts and circumstances of each particular case, no general rule can be laid down which will afford a test in all cases for its application.' "); *Gerken v. Davidson Grocery Co.,* 57 Idaho 670, 69 P.2d 122, 126–127 (1937), (" 'The doctrine of subrogation is not administered as a legal right, but the principle is applied to subserve the ends of justice and to do equity.' In *Richardson v. American Surety Co.,* 97 Okl. 264, 223 P. 389, 392, the court said: 'The principle to be derived from the doctrine of subrogation is that it is born of equity, and results from

the natural justice of placing the burden where it ought to rest. It does not flow from any fixed rule of law, but rather from principles of justice, equity, and benevolence. It is a purely equitable result, depending, like other equitable doctrines, upon the facts and circumstances of each particular case to call it forth. It is a device adopted or invented by equity to compel the ultimate discharge of a debt or obligation by him, who in good conscience ought to pay it.' "); *Martin v. Hickenlooper*, 90 Utah 150, 59 P.2d 1139, 1140 (1936), ("In the first place, it is a purely equitable doctrine borrowed from the civil law.... Says the court in *Kent v. Bailey*, 181 Iowa 489, 164 N.W. 852, 853: 'The books agree that subrogation is not founded on contract or privity or strict suretyship, but is born of equity, and results from the natural justice of placing the burden where it ought to rest. The remedy depends upon the principles of justice, equity, and benevolence to be applied to the facts of the particular case. It is of equitable origin, adopted to compel the ultimate discharge of a debt or obligation by him who in good conscience ought to pay it.' ")

Thus, I cannot join in an opinion which treats the equitable concept of "subrogation" as an "entitlement." Where a claimant's reduced recovery is attributable to his own contributory negligence, as in *Clary, supra,* and in *Kelsh, supra,* I have no difficulty in enforcing the Bureau's subrogation "interest." I agree that the claimant's conduct should not affect the Bureau's subrogation interest. But, where the claimant's reduced recovery is ordained by another statute, I would prefer to construe the two statutes together. N.D.C.C. § 1–02–07 ("... the two shall be construed, if possible, so that effect may be given to both provisions, ..."). I anticipate that the passage of Ch. 404, 1987 N.D. Sess. Laws, making significant changes in tort law about comparative fault and liability for damages, may bring about a number of instances where the Bureau's subrogation interest must be weighed and construed with the impact of other enactments. See N.D.C.C. § 32–03.2–01 through § 32–03.2–12 (Supp.1987).

I cannot agree that "[t]he reason that a recipient secures only a partial recovery against the third-party tortfeasor is immaterial...." Reason is the core of any equitable concept, and ought to direct the application of an equitable doctrine like "subrogation."

In this case, a majority of this court has chosen to maintain the subrogation interest of the Bureau over the interests of injured claimants impaired by an immunity not of their making. I hesitate to call that equitable because it suggests a regression to a totalitarian view of the role of government that once reigned: "The King can do no wrong," or at least no big wrong. *See Kitto v. Minot Park District*, 224 N.W.2d 795 (N.D.1974). If there is justification for this result, it must be in the settlement by the claimants, accepting partial damages for their injuries rather than litigating the full responsibility of the third-party wrongdoer, however fruitless that may have appeared. Since the subrogation statute does declare that the "bureau's subrogation interest may not be reduced by settlement," I hesitantly concur.