John Mark BARTELS, Plaintiff,

v.

CITY OF WILLISTON, Defendant and Third Party Plaintiff,

v.

Donald HACKNEY, Third Party Defendant.

Civ. No. 9547.

Supreme Court of North Dakota.

Feb. 1, 1979.

Nilles, Hansen, Selbo, Magill & Davies, Fargo, for plaintiff; argued by Stephen W. Plambeck, Fargo.

Fleck, Mather, Strutz & Mayer, Bismarck, for defendant and third party plaintiff; argued by Thomas A. Mayer, Bismarck.

Zuger & Bucklin, Bismarck, for third party defendant; argued by William P. Zuger, Bismarck.

SAND, Justice.

The issues under consideration herein were presented in the form of certified

questions involving and pertaining to the North Dakota Contribution Among Tort-Feasors Act, Chapter 32–38, North Dakota Century Code, and the comparative negligence act, § 9–10–07, NDCC. The facts are not in dispute.

On 11 March 1977, about 2:30 a. m., John Mark Bartels (plaintiff), a passenger in a 1976 Jeep Cherokee, was seriously injured, causing him to be a quadriplegic, when the Jeep, driven by its owner, Donald Hackney (third-party defendant), went over a cliff, landing on its roof.

The accident occurred on property under lease to the City of Williston for potential use as a sanitary landfill site. The land was under the control and possession of the City, and was being used for mining sand and gravel for the use and benefit of the city.

Subsequently, Bartels, through his attorney in fact, for the consideration of $50,000, gave a release [1] to Donald Hackney and his insurer, American Family Insurance. The release was also ratified under oath by John Mark Bartels.

Bartels then brought an action against the City of Williston, which brought a third-party action against Donald Hackney. The third-party defendant, Hackney, moved for summary judgment under Rule 56, Federal Rules of Civil Procedure, seeking to have the third-party complaint against him dismissed. This gave rise to several legal issues.

The United States District Court, as permitted by Rule 47, North Dakota Rules of Appellate Procedure, certified the following questions to this court:

1. In an action for negligence arising under North Dakota Century Code § 9–10–07, does a release given in good faith to one of two or more persons liable in tort for the same injury, pursuant to N.D. C.C. Ch. 32–38, discharge the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor?

2. In such an action, when determining the right of a tort-feasor to contribution, pursuant to North Dakota Century Code Ch. 32–38, shall the pro rata shares of the common liability be determined in proportion to the percentage of negligence attributable to each tort-feasor under North Dakota Century Code § 9–10–07?

3. In such action, when a plaintiff in good faith has given one of two or more persons liable in tort for his injury, a release pursuant to North Dakota Century Code Ch. 32–38, shall the finder of fact determine the percentage of negligence attributable to the released tort-feasor together with the percentage of negligence attributable to the parties and, if so, shall the award of damages to the plaintiff be reduced (a) in the manner specified by North Dakota Century Code § 32–38–04(1), or (b) by an amount proportionate to the percentage of negligence allocated to the released tort-feasor?

4. In the event that the opinions rendered on questions 1 through 3 above find that there has been an amendment of the original provisions of North Dakota Century Code Ch. 32–38 as enacted by the North Dakota Session Laws, 1957, ch. 223, Sections 1 through 4, what is the effective date of that amendment, and if amended prospectively only, does such amendment affect the rights of the parties in this litigation?

In resolving and answering the certified questions we need to consider all pertinent statutory provisions, their source and prior court construction, particularly the joint tort-feasor contribution act, Chapter 32–38, NDCC, and the comparative negligence act, § 9–10–07, NDCC.

The pertinent provisions of the joint tort-feasor contribution act provide as follows:

1. The release was a general release which released Hackney "from all claims, demands, actions, judgments, and executions that Releasor ever had, or now has, or may have, either known or unknown . . .." The release further provided that it "is intended to cover only the Releasees named herein with respect to the above-described accident. Releasor expressly reserves all rights, claims, and causes of action that he may have against any other persons, firms, or corporations with respect to the aforementioned accident."

Section 32–38–01. *Right to contribution.*

"1. Except as otherwise provided in this chapter, where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.

"2. The right of contribution exists only in favor of a tort-feasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tort-feasor is compelled to make contribution beyond his own pro rata share of the entire liability.

"3. There is no right of contribution in favor of any tort-feasor who has intentionally (willfully or wantonly) caused or contributed to the injury or wrongful death.

"4. A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tort-feasor whose liability for the injury or wrongful death is not extinguished by the settlement nor in respect to any amount paid in settlement which is in excess of what was reasonable."

Section 32–38–02. *Pro rata shares.*

"In determining the pro rata shares of tort-feasors in the entire liability:

"1. Their relative degrees of fault shall not be considered.

"2. If equity requires the collective liability of some as a group shall constitute a single share.

"3. Principles of equity applicable to contribution generally shall apply."

Section 32–38–04. *Release or covenant not to sue.*

"When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:

"1. It does not discharge any of the other tort-feasors from liability for the injury or wrongful death unless its terms so provide; but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater.

"2. It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor."

These provisions were enacted in 1957 and were derived from the "Uniform Contribution Among Tort-Feasors Act" as revised in 1955 by the Commission on Uniform State Laws.

The commissioners made comments explaining the purpose of the act and other related matters. The commissioners' comment with reference to subsection (b), which is now § 32–38–01(1), states as follows:

"This provision is supported by several dozen decisions dealing with contribution in surety and other contract cases, and a court would almost certainly reach the result without the provision. It now appears desirable to spell it out."

With reference to subsection (d), which is § 32–38–01(4), the commissioners' comment states:

"The policy of the Act is to encourage rather than discourage settlements. The tort-feasor who settles removes himself entirely from the case as far as contribution is concerned if he is able and chooses to buy his peace for less than the entire liability. If he discharges the entire obligation it is only fair to give him contribution from those whose liability he has discharged. Since the settlement must be reasonable it follows that the question of total liability to the injured party may be litigated in the contribution action."

With reference to § 32–38–02, the commissioners' comment in part states as follows:

"First it recognizes and registers the lack of need for a comparative negligence or degree of fault rule in contribution cases. . . ."

"Second, it invokes the rule of equity which requires class liability, including the common liability arising from vicarious relationships, to be treated as a single share. . . .

"Third, it makes it clear that except as limited by the section, principles of equity shall control. . . ."

With reference to § 32–38–04(2), the Commissioners' comment first discussed the objectives of the 1939 act that a plaintiff, motivated by sympathy or spite, or because it might be easier to collect from one than the other, should not be permitted to release one tort-feasor from his fair share of liability and mulct another instead, and that the release from contribution affords too much opportunity for collusion between the plaintiff and the released tort-feasor against the one not released. It also recognizes complaints from states which adopted the act, that the act did not accomplish what it was intended to prevent. The commissioners' comment concluded by stating:

"It seems more important not to discourage settlements than to make an attempt of doubtful effectiveness to prevent discrimination by plaintiffs, or collusion in the suit. Accordingly, the subsection [2] provides that the release in good faith discharges the tort-feasor outright from all liability for contribution. This is consistent with subsection (1)(d) [subsection 4 of § 32–38–01] which provides that the settling tortfeasor has himself no right of contribution against another unless he has assumed the full responsibility to the claimant."

Victor E. Schwartz,[2] in discussing comparative negligence, Section 16.7, Contribution among tortfeasors, page 262, observed that the uniform contribution among tort-feasors act was revised in 1955 by inserting the clause "their relative degrees of fault shall not be considered." (This language is now part of § 32–38–02(1), NDCC.) He further observed that North Dakota was one of the two states that adopted the 1955 version. He then stated:

"In North Dakota, this clause appears to have been superseded, at least in part, by the provision in the comparative negligence statute that 'contributions to awards shall be in proportion to the percentage of negligence attributable to each.'"

The same author, on page 269, stated:

"Seven of the states with modified comparative negligence—Minnesota, Nevada, New Hampshire, New Jersey, North Dakota, Texas and Vermont—provide in their comparative negligence statutes for apportionment of liability among tortfeasors on the basis of their relative negligence. The language varies, but the effect is the same: pure comparative negligence."[3]

Also pertinent to the questions under consideration, the statute enacted by the North Dakota Legislature in 1973, known as the comparative negligence act, provides as follows:

Section 9–10–07. *Comparative negligence.*

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of

---

2. Schwartz, Victor E., (Professor of Law and Acting Dean, College of Law, University of Cincinnati) Comparative Negligence, 1974.

3. A point of interest, the California Supreme Court in *Li v. Yellow Cab Co. of California,* 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393, (1975), construed its contributory negligence act which was identical to § 9–10–06, NDCC, before the 1973 amendment, as substantially embracing the comparative negli-

gence statute on the basis that the language "except so far as the latter has willfully or by want of ordinary care," etc., in effect recognizes comparative negligence rather than the doctrine that any negligence prohibits a recovery at all. The California court reached this conclusion on the basis that equity demands that the statute be construed in such manner, and, more, that equity demands that the pure form of comparative negligence be adopted.

negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each; provided, however, that each shall remain jointly and severally liable for the whole award. Upon the request of any party, this section shall be read by the court to the jury and the attorneys representing the parties may comment to the jury regarding this section."

This section was derived from the Minnesota [4] comparative negligence statute enacted in 1969 which, in turn, was based upon Wisconsin's statute,[5] § 331.045 [now codified as WSA § 895.045]. The North Dakota statute is identical to that of Minnesota except for the last sentence, which is new material.

▇ Where a statute is taken from another state and adopted without change it is taken with the construction placed upon it by the court of last resort of the state from whence the statute came. It is also presumed that the legislature adopted the construction previously placed upon it by the courts of the state from which the statute was taken. *Hermanson v. Morrell,* 252 N.W.2d 884 (N.D.1977).

The committee comment on the Minnesota comparative negligence statute, § 604.01 enacted in 1969, supplied by the Minnesota Bar Association as a portion of the interpretive memorandum of its legislative committee, provides as follows:

"The Minnesota Comparative Negligence Statute [M.S.A. § 604.01] is based on Wisconsin law. The first sentence of our statute is identical to Wisconsin Statute 331.045 [W.S.A. § 895.045], adopted in 1931. Wisconsin case law was carefully researched and evaluated with the result that the balance on the Minnesota statute is based on that source. The new statute [M.S.A. § 604.01] affects all negligence claims involving both property damage and personal injury."

The Minnesota Supreme Court in *Olson v. Hartwig,* 288 Minn. 375, 180 N.W.2d 870 (1970), affirmed and supported the earlier position of the committee.

"While it is not an inflexible rule, normally when we adopt a statute from another state which has been interpreted by the highest court of that state, we take the interpretation with the statute. *Minnesota Baptist Convention v. Pillsbury Academy,* 246 Minn. 46, 74 N.W.2d 286; *Phelps v. Benson,* 252 Minn. 457, 90 N.W.2d 533. The same rule prevails in borrowing constitutional provisions from another state."

Relying upon case law and the Minnesota committee comment as set out earlier herein, we are compelled to conclude that the state of Minnesota adopted the Wisconsin statute with the interpretations and constructions placed upon that statute by the Wisconsin Supreme Court as announced in *Bielski v. Schulze,* 16 Wis.2d 1, 114 N.W.2d 105 (1962), and *Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963). This conclusion is supported by *Tolbert v. Gerber Industries, Inc.,* 255 N.W.2d 362 (Minn. 1977), and *Luxenburg v. Can-Tex Industries,* 257 N.W.2d 804 (Minn.1977). See

---

**4.** The Minnesota comparative negligence statute, § 604.01, was amended in 1978 by deleting the last sentence, "When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award." Although the North Dakota act has identical language, this amendment is not pertinent to the basic question we have under consideration.

**5.** The Wisconsin statute, § 895.045, was amended in 1971 by deleting the words "as great as" and substituting in place thereof the words "greater than." This change or amendment is not pertinent to the question we have under consideration.

also, *Frey v. Snelgrove,* 269 N.W.2d 918 (Minn.1978).

A brief examination of pertinent Wisconsin and Minnesota case law developed prior to 1973 regarding the comparative negligence statute will be helpful because it is presumed the Legislature adopted the case law with the statute.

In *Pierringer v. Hoger, supra,* the Wisconsin Supreme Court had under consideration a release executed after the decision of *Bielski v. Schulze, supra.* The court first discussed the historical application of actions against more than one tort-feasor and observed that the law had been changed and that the contents of a release would be a matter to be considered. The court stated, normally, the allocation of negligence arises out of the necessity of determining contributory negligence, but in the absence of the issue of contributory negligence where joint tort-feasors are involved, *Bielski* requires an allocation of the causal negligence to determine contribution. The court stated, 16 Wis.2d 1, 114 N.W.2d, at pages 111 and 112:

> "A release of one tort-feasor before trial and subsequent dismissal of the action and counter-claim against him does not complicate this problem. The instant releases contemplate such an issue of allocation as binding upon the plaintiff because he has satisfied that part of his cause of action for which liability is found to be attributable to the settling tort-feasors. The issue between the plaintiff and the nonsettling defendant, which should be framed by an amendment to the pleadings, is the percentage of causal negligence, if any, of the nonsettling defendant, but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved. The determination of this issue between the plaintiff and the nonsettling defendant does not require the settling defendants to remain parties because the allocation, if any, of the causal negligence to the settling tortfeasors is merely a

part of the mechanics by which the percentage of causal negligence of the nonsettling tort-feasor is determined. It makes no practical difference to the settling tort-feasors what percentage of causal negligence is allocated to them because they have bought their peace in any event.

> "Upon the trial the release should be given immediate effect, as it is for contribution purposes, and the judgment, if any, against the nonsettling defendant should only be for that percentage of the negligence allocated to him by the findings or the verdict. The claim for the balance has been satisfied by the plaintiff and there is no point in going through the circuity of ordering a judgment for a larger amount and requiring the plaintiff to satisfy it."

We agree with this concept and adopt it.

In *Winge v. Minnesota Transfer Railway Co.,* 294 Minn. 399, 201 N.W.2d 259 (1972), the Minnesota Supreme Court had under consideration its comparative negligence statute, § 604.01, M.S.A. The court said, at page 263:

> "While the statute speaks of a comparison of negligence, in application what is really compared, upon a consideration of all relevant facts and circumstances, is the relative contribution of each party's negligence to the damage in a causal sense."

In the later case of *Ferguson v. Northern States Power Co.,* 307 Minn. 26, 239 N.W.2d 190 (1976), the Supreme Court had occasion to speak further on the comparative negligence statute. The court, in effect, concluded that the apportionment of the cause of negligence is to be made amongst all parties who were determined by the jury to be causally negligent and that causal negligence could not be apportioned between one of the defendants and the plaintiff and then with another defendant and the plaintiff. The total effect of the court's decision is that causal negligence must be determined on a percentage basis with all of the parties who were causally negligent.

In *Tolbert v. Gerber Industries, Inc., supra,* the Supreme Court again considered the Minnesota comparative negligence statute and stated that the term "joint tort-feasor" used in connection with the act, and the rule requiring allocation of loss between joint tort-feasors based on their relative fault rather than on strict principles of indemnity, includes all cases where there is joint liability for tort whether the acts of those jointly liable were concerted concurrently or even successively in point of time.

In *Luxenburg v. Can-Tex Industries,* 257 N.W.2d 804 (Minn.1977), the court had under consideration the effect of a release and an accord and satisfaction, and in substance concluded that if the injured party accepted full satisfaction for his injuries, the law will not permit him to recover again for the same injury, but if he did not receive full satisfaction he is not barred until he has received full satisfaction, and if the injured party receives a part of damages from one of the tort-feasors it does not discharge the other tort-feasors from liability until he has had an accord and satisfaction with them, either by operation of law or by agreement.

These principles are persuasive.

The North Dakota contribution among tort-feasors act has provisions which are flexible and operative in their own sphere and under their own principles of law as developed by case law in jurisdictions which have adopted the act. However, with the enactment of the comparative negligence act, another element has been introduced which needs to be considered in the overall application of the joint tort-feasors act. Before we attempt to reconcile the comparative negligence act with the contribution among tort-feasors act, it is essential that we first determine the goals and objectives of the comparative negligence act. Those goals and objectives can be obtained, to a degree, from the States that have adopted and used the act.

North Dakota, except for the last sentence, adopted its comparative negligence act verbatim from the Minnesota statute, and as a result the principles stated in *Hermanson v. Morrell, supra,* apply.

Minnesota adopted its comparative negligence act in substantially the same form as it existed in the State of Wisconsin. Minnesota, by case law, has substantially the same principles of law as North Dakota regarding the adoption of an act from another state which has been construed by the highest court of that state before the act was adopted. *Olson v. Hartwig, supra.* Consequently the Wisconsin concepts adopted by Minnesota were in due course adopted by North Dakota because the Wisconsin Supreme Court had ruled extensively on the provisions of the act before Minnesota adopted it, and Minnesota construed its act in harmony with the case law of Wisconsin before North Dakota adopted it from Minnesota. We are not only justified in examining the Minnesota case law developed under its comparative negligence act but also need to examine the Wisconsin case law.

Case law of other states having substantially the same comparative negligence law is also significant and may be considered if the reasoning is persuasive.

After examining the case law of the various states—Minnesota and Wisconsin included—it becomes apparent that each state struggled with growing pains and went through a period of refining its earlier decisions to eliminate inequities and other difficulties. We would be foolhardy to go through a similar process of trial and error when we now have readily available, the refined product gained through the experience of those states which had to struggle with some of the same problems from the period of adoption to subsequent modification.

■ The comparative negligence act, we believe, was enacted to eliminate the inequities under its predecessor, the contributory negligence act, which permitted no recovery if the plaintiff was merely one percent contributorily negligent.

Even with the refined construction as developed by case law, some shortcomings may still exist permitting "short-dealings" involving situations of more than one defendant. Nevertheless, accepting these re-

finements is better than the alternative of doing our own exploring. In so doing we have the advantage of eliminating the mistakes experienced by others and benefitting therefrom.

For further discussion of the two acts under consideration see *Claunch v. Bennett*, 395 S.W.2d 719 (Tex.Civ.App.1965); Uniform Laws Annotated, Vol. 12; Annot., 53 A.L.R.3d 184 (1973); Annot., 40 A.L.R.3d 1181 (1971); Annot., 34 A.L.R.3d 1374 (1970); Kroll, *Comparative Fault: A New Generation in Products Liability*, August 1977 Insurance Law Journal 492; Simonett, *Release of Joint Tort-Feasors: Use of the Pierringer Release in Minnesota*, 3 William Mitchell Law Review 1; Wade, *A Uniform Comparative Fault Act—What Should It Provide*, 1977 University of Michigan Journal of Law Reform 1.

In line with our earlier discussion herein, and by taking the foregoing articles into account, we construe and interpret the North Dakota comparative negligence act in line with the refined interpretations and constructions that have been placed upon it by the state from whom we adopted the act, and by other states which have had occasion to construe similar acts, particularly where the court's reasoning is persuasive.

■ We are also mindful that whenever a statute is subject to a judicial construction it is our duty to construe it in the manner which will accomplish the goals and objectives of the statute. This principle, along with the rules of construction providing that the latest enactment, if there is an irreconcilable conflict, prevails unless the language is clear and specific, have been enacted into law by our Legislature. See §§ 1–02–09, 1–02–09.1, 1–02–09.2, 1–02–33, and specifically § 1–02–39, NDCC, which set out aids in the construction of statutes.

■ In accordance with the foregoing principles, and keeping in mind that the comparative negligence act and other related statutory provisions were designed to promote settlements rather than lawsuits, we will reconcile the provisions of Chapter 32–38 and § 9–10–07, which is a subsequent

enactment. In doing so, however, we should avoid a construction which would permit an imposition of greater liability on a nonreleased tort-feasor with a right of contribution in a multiple-party tort-feasor situation. Such a construction would not be in accordance with the basic concepts of justice. For that matter, there may be serious doubt that one tort-feasor and the plaintiff could, by or through a release, impose greater liability on other joint tort-feasors not covered by the release.

■ After analyzing the provisions of § 9–10–07, NDCC, we are of the opinion that it is basically self-sufficient and in that respect we agree with Victor E. Schwartz that North Dakota, in enacting its comparative negligence act (§ 9–10–07) in 1975, in effect adopted the pure comparative negligence concept at least in instances involving more than one tort-feasor. This concept also embraces related matters and contemplates the allocation of costs on the same percentage basis as the allocation of damages unless justice requires otherwise.

■ With these concepts in mind and the facts presented, particularly the fact that § 9–10–07, NDCC, is the later-enacted statute, and after attempting to reconcile the pertinent provisions, we conclude that § 32–38–02(1), NDCC, has been impliedly repealed by the enactment of § 9–10–07, NDCC.

■ We further conclude that the following language of § 32–38–04(1), NDCC, as the result of the enactment of § 9–10–07, NDCC, has been impliedly repealed: "of any amount stipulated by the release or the covenant, or in the amount of consideration paid for it, whichever is the greater." and has been substituted with the following underscored language: "of the relative degree of fault (percentage of negligence) attributable to the released joint tort-feasors."

We further conclude, on the basis that all of the pertinent facts took place after July 1, 1973, that the construction placed upon the provisions of Chapter 32–38 and § 9–10–07, NDCC, as outlined above, apply to the litigants in the instant case.

■ We also conclude that the following language in § 9–10–07, NDCC, "provided, however, that each shall remain jointly and severally liable for the whole award" is for the benefit of the injured party and can be waived. Section 1–02–28, NDCC.

■ The general release given to Hackney constituted a general release for all of his liabilities present and future, including contributions either specifically or by construction, and as a settling tort-feasor he is excluded as a party from any further action against any of the remaining nonsettling tort-feasors. Bartels' (plaintiff's) recovery from the nonsettling tort-feasors is limited to the percentage of negligence attributable to the remaining nonsettling tort-feasors as may be determined by the court or the jury, as the case may be.

In this instance, John Bartels, the plaintiff, through the release, waived the following underscored language of § 9–10–07, NDCC:

"When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each; <u>provided, however, that each shall remain jointly and severally liable for the whole award.</u>" [Underscoring ours.]

■ In accordance with the foregoing conclusions, we now answer the certified questions after first stating the question.

1. In an action for negligence arising under North Dakota Century Code § 9–10–07, does a release given in good faith to one of two or more persons liable in tort for the same injury, pursuant to N.D.C.C. Ch. 32–38, discharge the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor?

Our answer is Yes.

2. In such an action, when determining the right of a tort-feasor to contribution, pursuant to North Dakota Century Code Ch. 32–38, shall the pro rata shares of the common liability be determined in proportion to the percentage of negligence attributable to each tort-feasor under North Dakota Century Code § 9–10–07?

Our answer is Yes.

3. In such action, when a plaintiff in good faith has given one of two or more persons liable in tort for his injury, a release pursuant to North Dakota Century Code Ch. 32–38, shall the finder of fact determine the percentage of negligence attributable to the released tort-feasor together with the percentage of negligence attributable to the parties and, if so, shall the award of damages to the plaintiff be reduced (a) in the manner specified by North Dakota Century Code § 32–38–04(1) or (b) by an amount proportionate to the percentage of negligence allocated to the released tort-feasor?

The answer to the first part of the question is that the fact finder shall determine the percentage of negligence attributable to the released tort-feasor as well as the percentage attributable to the remaining tort-feasors (defendants).

Our answer to the second part of the question is that the damages shall be reduced by an amount proportionate to the percentage of negligence allocated to the released tort-feasor.

4. In the event that the opinions rendered on questions 1 through 3 above find that there has been an amendment of the original provisions of North Dakota Century Code Ch. 32–38 as enacted by the North Dakota Session Laws, 1957, ch. 223, Sections 1 through 4, what is the effective date of that amendment, and if amended prospectively only, does such amendment affect the rights of the parties in this litigation?

Our answer to the first part of this question is that Chapter 32–38, NDCC, has been amended as outlined in the opinion earlier as a result of the enactment of § 9–10–07, NDCC, which became effective on July 1, 1973, and is the date upon which the amendments became effective.

In response to the second part of the question, our answer is that the amendments apply to the litigants in this action, as stated earlier in the opinion, on the grounds that all of the facts took place subsequent to 1 July 1973.

While some of the answers to the certified questions may have general application, we must nevertheless caution that they were predicated upon the facts of this case, particularly the general release given to one of the alleged tort-feasors. The absence of a general release or a different set of facts conceivably could produce different answers.

The certified questions were submitted by the United States District Court sua sponte; therefore, neither party shall be taxed for costs.

ERICKSTAD, C. J., and SAND, PAULSON, PEDERSON and VANDE WALLE, JJ., concur.