MR. JUSTICE GULBRANDSON,
concurring and dissenting:
For the most part, I concur with the majority opinion. I respectfully dissent from that part of the majority opinion which retains the dollar credit rule in Montana. In my view, this Court should follow the modern trend and adopt the percent credit rule.
Courts and commentators have established three alternative solutions to the issue presented here, i.e., what effect will a joint tortfeasor’s out of court settlement have upon a judgment entered against a non-settling joint tortfeasor (given that the latter has no right of contribution against the former). Those alternatives are: (1) the dollar credit rule — the amount of the settlement or covenant not to sue is credit against the judgment entered against the non-settling defendant, (2) the pro rata credit rule — this rule reduces the non-settling defendant’s liability on the judgment in a proportion equal to the number of settling tortfeasors divided by the total number of tortfeasors; and (3) the percent credit rule — the non-settling defendant’s liability on the judgment is reduced by the percentage of causation allocated to the settling tortfeasor. As the fol *401 lowing hypothetical example will show, the dollar credit rule can yield unjust and devastating results.
Let us suppose the following. A supplies B with a defective car which B crashes into D who is crossing a street. The defective brakes in the car are the main cause of the accident and we will assume that A is 90% negligent. However, B was slightly careless and he was 10% at fault. D settles his suit against A for $10,000. D then wins a $100,000 judgment against B in a negligence action. Under the majority’s dollar credit rule, the $10,000 settlement is credited against the verdict and B, who was only 10% at fault, has to pay $90,000. Under the percent credit rule, the amount of A’s negligence, 90%, is credited against the judgment and B has to pay $10,000. Results of the majority’s dollar credit rule include: (1) the plaintiff can insulate a settling tortfeasor from his true degree of liability by entering into a low settlement (the remaining defendant will have no right of contribution from the settling tortfeasor); and (2) the plaintiff can impose a completely disproportionate share of liability upon the remaining defendant.
Many courts criticize the dollar credit rule, and rightly so. The Texas Supreme Court stated:
“A dollar credit reduces the liability of the non-settling defendants, pro tanto, by the dollar amount of any settlement. The defendant’s liability thus may fluctuate depending on the amount of a settlement to which he was not a party. This fluctuation cannot be reconciled with the policy of apportioning liability in relation to each party’s responsibility, the conceptual basis of comparative causation. A dollar credit also encourages collusion by shielding plaintiffs from the effect of bad settlements while denying them the benefit of good settlements. (Emphasis added.)”
Duncan v. Cessna Aircraft Co. (Tex. 1984), 665 S.W.2d 414, 430. The North Dakota Supreme Court criticized the dollar credit rule and stated, “[T]here may be serious doubt that one tort-feasor and the plaintiff could, by or through a release, impose greater liability on other joint tort-feasors not covered by the release.” Bartels v. City of Williston (N.D. 1979), 276 N.W.2d 113, 121. Similarly, The Fifth Circuit Court of Appeals stated:
“The problems with a [dollar credit rule] arise from the fact that it provides no rational basis for allocating damages among the joint tortfeasors. (Citation omitted.) Certainly, nothing prevents a collusive, low settlement with a less solvent tortfeasor, who might even be largely responsible for the harm, in exchange for that tortfeasor’s *402 assistance in prosecuting a claim against the less responsible, more solvent joint tortfeasor.”
Dobson v. Camden (5th Cir. 1983), 705 F.2d 759, 768, vacated on rehearing, 725 F.2d 1003 (5th Cir. 1984). In a decision authored by Mr. Justice William J. Brennan, Jr., now of the United States Supreme Court, the New Jersey Supreme Court also criticized a modified dollar credit rule.
“If the injured party is required to credit only the amount received in settlement (citation omitted) he may be tempted to make collusive settlements, a mischief incident to the denial of contribution which was one of the strongest reasons for the statutory change allowing a right of contribution.”
Judson v. Peoples Bank & Trust Company of Westfield (1954), 17 N.J. 67, 110 A.2d 24, 36.
As shown by the majority, a number of states have statutory dollar credit rules. This is largely a result of those states’ adoption of one version or another of the Uniform Contribution Among Tortfeasors Act which provides for the dollar credit rule.
Section 6 of the 1977 Uniform Comparative Fault Act (UCFA) was intended to replace Section 4 (the dollar credit rule) of the 1955 Uniform Contribution Among Tortfeasors Act in a state (such as Montana) following the principle of comparative fault and, as stated by the majority, the newer Act provides for a percent credit rule rather than a dollar credit rule. A comment to the UCFA advises those states adopting that Act that,
“A state that has adopted either of the two Uniform Contribution Among Tortfeasors Acts will of course plan to repeal it. This is also true of other statutory provisions on contribution for tortfeasors.” Uniform Comparative Fault Act Section 11 comment, 12 U.L.A. 47 (Supp. 1986). A further comment to the UCFA reveals that, “[t]he 1955 Act [Uniform Contribution Among Tortfeasors Act] should be replaced by this Act in any state that adopts the comparative fault principle, and would be eventually replaced.” Uniform Comparative Fault Act, prefatory note, 12 U.L.A. 38 (Supp. 1986). An observation of the Texas Supreme Court partially explains this comment. The old dollar credit [which the Uniform Contribution Among Tortfeasors Act provides for] is considered inappropriate in jurisdictions adopting a system of comparative causation.” (Emphasis added.) Duncan, 665 S.W.2d at 430, n. 10. Montana is such a jurisdiction.
The Duncan case is the most recent case in the modern trend to *403 wards adoption of the percent credit rule. The Texas Supreme Court found that the percent credit rule was consistent with Texas’ comparative causation system. The court adopted the percent credit rule and stated:
“The system of comparative causation we adopt allows allocation of liability between the parties, even when the injury itself is indivisible. (Citation omitted.) Because each defendant’s share can now be determined, it logically follows that each may settle just that portion of the plaintiff’s suit. The settlement does not affect the amount of harm caused by the remaining defendants and likewise should not affect their liability.” (Emphasis added.)
Duncan, 665 S.W.2d at 431.
Bartels, the North Dakota Supreme Court case cited above, is a leading case in the modern trend. The Bartels court adopted the percent credit rule in North Dakota notwithstanding the fact that the state legislature had statutorily enacted a dollar credit rule. The court found that the North Dakota comparative negligence statute (which is very similar to Montana’s) impliedly repealed the statutory dollar credit rule. The Bartels court reasoned that when the North Dakota legislature borrowed the comparative negligence statute from Wisconsin and Minnesota, it also borrowed the Wisconsin and Minnesota courts’ interpretation of that statute. Bartels followed the Wisconsin cases and construed the North Dakota comparative negligence statute as requiring the percent credit rule. See Pierringer v. Hoger (1963), 21 Wis.2d 182, 124 N.W.2d 106; Bielski v. Schulze (1962), 16 Wis.2d 114, 114 N.W.2d 105.
This Court should adopt the percent credit rule as the logical complement to our comparative negligence statute, just as Wisconsin, Minnesota and North Dakota did with respect to their comparative negligence statutes. Montana’s comparative negligence statute indicates a legislative intent to apportion fault among the parties. More importantly, Montana’s contribution statute, Section 27-1-703, MCA, indicates a legislative intent to apportion fault among tortfeasors, whether those tortfeasors have settled or not. In pertinent part, 27-1-703, MCA, provides, “[w]henever more than one person is found to have contributed as a proximate cause to the injury complained of, the trier of fact shall apportion the degree of fault among such persons.” (Emphasis added.) Significantly, that statute does not limit its application to parties but applies to persons.
In Doyle v. United States (D.C.S.C. 1977), 441 F.Supp. 701, the *404 federal court also found that the percent credit rule was particularly consistent and compatible with a comparative fault doctrine. The 'court adopted the percent credit rule in a case where the settlement bars contribution and in the context of admiralty jurisprudence which has a comparative fault doctrine.
In Dobson v. Camden (5th Cir. 1983), 705 F.2d 759, vacated on rehearing, 725 F.2d 1003, (5th Cir. 1984), the Fifth Circuit Court of Appeals adopted the percent credit rule in the context of a Section 1983 action. The court found that federal law was deficient on the effect of a plaintiff’s settlement with one joint tortfeasor as against a later judgment against a non-settling joint tortfeasor. The court rejected the local state’s dollar credit rule and reasoned that the dual policies of Section 1983, compensation and deterrence, called for a percent credit rule.
Other courts have also adopted or advocated the percent credit rule. See Frey v. Snelgrove (Minn. 1978), 269 N.W.2d 918; Cartel Capital Corp. v. Fireco of New Jersey (1980), 81 N.J. 548, 410 A.2d 674; Gomes v. Broadhurst (3rd Cir. 1967), 394 F.2d 465; Gustafson v. Benda (Mo. 1983), 661 S.W.2d 11 (criticizing Missouri’s statutory dollar credit rule and advocating the legislative adoption of the percent credit rule). Commentators have also recommended the percent credit rule. See, e.g., Fleming, Report to the Joint Committee of the California Legislature on Tort Liability on the Problems Associated with American Motorcycle Association v. Superior Court, 30 Hastings L.J. 1464, 1498 (1979); Comment, Comparative Negligence, Multiple Parties, and Settlements, 65 Cal.L.Rev. 1264 (1977).
The majority opinion rests on the conclusion that non-settling defendants should be jointly and severally liable for the judgment (less the amount of settlement) even where the plaintiff has settled with one joint tortfeasor for a sum completely inadequate as to that tortfeasor’s liability. The better view is that the plaintiff, by settling with one tortfeasor, has waived his right to hold the remaining tortfeasor jointly and severally liable for the remainder of his damages. In Bartels the North Dakota Supreme Court held that the plaintiff’s right to joint and several liability was for his/her benefit and that the plaintiff waived the right as to a non-settling defendant by releasing a joint tortfeasor. Montana statutory law provides a basis for a similar holding. Section 1-3-204, MCA, states “[ajnyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by *405 a private agreement.” In the context of a single case, the plaintiff’s right to joint and several liability is solely for his/her benefit and not for a public reason. We should follow the Bartels ruling on this point.
The majority states that:
“It would make no sense to keep a settling concurrent tortfeasor in the action as an additional defendant or a third party defendant to determine its proportional fault for plaintiff’s injuries, when the non-settling defendants have no right of contribution from the settling defendant . . . Since no contribution is allowed against a settling defendant, it is pointless to keep a settling party in the action simply to determine his comparative fault when the remaining defendants are severally liable to the plaintiff.”
That statement misses the point. As shown in the preceding paragraph, the better view is that the remaining defendants should not be severally liable to the plaintiffs as plaintiffs have waived their right to that benefit. Moreover, the percent credit rule does not require that the settling tortfeasor be retained as an additional defendant or third party defendant, as the majority implies.
“The issue between the plaintiff and the nonsettling defendant, which should be framed by an amendment to the pleadings, is the percentage of causal negligence, if any, of the nonsettling defendant, but such percentage of negligence can only be determined by a proper allocation of all the causal negligence, if any, of all the joint tort-feasors and of the plaintiff if contributory negligence is involved. The determination of this issue between the plaintiff and the nonsettling defendant does not require the settling defendants to remain parties because the allocation, if any, of the causal negligence to the settling tort-feasors is merely a part of the mechanics by which the percentage of causal negligence of the nonsettling tortfeasor is determined. It makes no practical difference to the settling tort-feasors what percentage of causal negligence is allocated to them because they have bought their peace in any event.” Pierringer, 124 N.W.2d at 111-112. The Texas Supreme Court stated in Acord v. General Motors Corp. (Tex. 1984), 669 S.W.2d 111, 117, that, “[t]he settling party’s liability can be determined even though the settlor is not joined. Requiring joinder of a settling tort-feasor as a party serves no useful purpose.” (Citation omitted.) See also, Keeton, Torts, 28 Southwestern L.J. 1, 14 (1974),
“Failure to join an alleged settling tortfeasor neither precludes nor, arguably, should it preclude the submission of the existence or *406 amount of his negligence. The determination of the existence or amount of his negligence is in no way dependent on his being a party, and there is no value in making him a formal party to the litigation except for procedural and tactical reasons on the part of claimant or defendants.”
The dollar credit rule simply requires the non-settling defendant to shoulder the burden of an inadequate, low settlement entered into by the plaintiff and the settling joint tortfeasor. The better rule is the percent credit rule which requires the plaintiff to shoulder the burden of any insufficient settlement he has voluntarily entered into.