**Mark Chris BEAUDOIN, Plaintiff,**

v.

**TEXACO, INC., Defendant.**

No. A4–85–81.

United States District Court,
D. North Dakota,
Northwestern Division.

Jan. 14, 1987.

Thomas A. Dickson, Bismarck, N.D., for plaintiff.

Richard H. McGee, Minot, N.D., for defendant.

Memorandum and Judgment On
Jury Verdict

VAN SICKLE, District Judge.

A collision of legal principles renders a truly equitable result in this case impossible. The difficult decision confronting this court is which inequitable result is most proper.

Mark Beaudoin, the plaintiff, was an employee of Wood Wireline. Texaco, Inc., the defendant, hired Wireline to conduct a pressure gradient check on Texaco's well, CM Loomer # 13 near Keene, North Dakota.

Beaudoin and a co-worker arrived on the unlighted site before dawn on February 21, 1983, to prepare their equipment for the job. Beaudoin was uncoiling wire from a large spool mounted on the wireline rig when he was struck in the left eye by the

end of the wire. He is now legally blind in that eye.

Texaco's employee John Spain arrived after the incident occurred to supervise the work being done on the site.

On March 29, 1985, Beaudoin brought an action for damages against Texaco. Beaudoin alleged that the injury was the result of Texaco's negligence in requiring the work to commence at an hour that would require the equipment to be set up in darkness, in failing to provide proper lighting, and in failing to properly supervise the work. Texaco alleged that the injury was the result of Beaudoin's negligence in handling the wire carelessly. Both parties denied the negligence alleged against them. Testimony was presented at trial that could have led to the conclusion that Wood Wireline was negligent in failing to provide proper equipment and training for its employees. Wood Wireline is immune from liability under the provisions of North Dakota's worker's compensation law, NDCC § 65–04–28, and is not a defendant in the action.

The jury found damages of $44,057.04, and apportioned the negligence causing the injury as follows; 60% to Wood Wireline, 30% to Beaudoin, and 10% to Texaco. This court must now determine what judgment results from this verdict.

That determination depends on the proper interpretation and application of North Dakota's comparative negligence statute.

Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person recovering. The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party; and the court shall then reduce the amount of such damages in proportion to the amount of negligence attributable to the person recovering. When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each; provided, however, that each shall remain jointly and severally liable for the whole award. Upon the request of any party, this section shall be read by the court to the jury and the attorneys representing the parties may comment to the jury regarding this section.

NDCC § 9–10–07.

The narrow question before this court is whether in cases involving a negligent plaintiff and more than one other negligent actor this statute allows recovery only against those defendants more negligent than the plaintiff or against all negligent defendants so long as the plaintiff's negligence is less than the combined negligence of the other negligent actors. The North Dakota Supreme Court has not ruled on this issue, and the other jurisdictions are divided.

This court must first determine how a federal district court sitting with diversity jurisdiction should properly approach resolving a legal issue not yet settled by the highest court of the law-determining state. *Federal Procedure, Lawyer's Edition* states that federal courts should decide such issues "without speculation as to how the state courts would decide the question as a novel issue and without surrendering their own judgment as to local law on account of dicta or other chance expression by state judges." 8 Fed Proc, L Ed § 20:376. This statement is supported by a citation to *New England Mutual Life Insurance Co. v. Mitchell*, 118 F.2d 414 (4th Cir.1941), cert. denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505. That case explicitly held that federal courts are obligated to exercise their own judgment in resolving open questions of state law without regard for how the highest court of the state would rule on the issue if confronted with it, and that dicta in past decisions of the state

court should not be considered. 118 F.2d at 419, 420. A 1968 case, citing *New England Mut.*, stated that the rule is "that absent state cases in point, it becomes the duty of the court to arrive at the decision that reason dictates, with the faith that the state courts will arrive at the same decision." *Ins. Co. of North America, v. English,* 395 F.2d 854, 860 (5th Cir.1968).

Two years later, another court, citing *New England Mut.* and *Ins. Co. of North America,* subtly changed the phrasing and the meaning of the principle. "The Court must attempt to arrive at a decision consonant with that which, in faith, it believes the state court would reach." *Alabama Great Southern R. Co. v. Allied Chemical Co.,* 312 F.Supp. 3, 8 (E.D.Va.1970). This latter approach has gained almost universal acceptance. See, e.g. *Stancil v. Merganthaler Linotype Co.,* 589 F.Supp. 78 (D.Hawaii 1984). These cases have, however, adhered to the principle that dicta or chance expressions in prior state court opinions are not determinative, and should not overcome the federal court's considered conclusion. *Id.*

The distinction between these two approaches is not insignificant, as the court will likely give different weight to the various sources of persuasive authority depending on whether they are viewed from the perspective of a federal district court or from the perspective of a state supreme court. This court will not presume to divine the thinking or inclinations of the justices of the North Dakota Supreme Court, but will attempt to examine and weigh the persuasive authority as that court would if this issue were before it. Those sources include the case law of sister states, the case law of the other states, the majority rule and modern trend if there are such, and principles of justice and equity. It is the opinion of this court that there is no conflict between the goal of seeking the best legal conclusion and the goal of seeking the conclusion that the North Dakota Supreme Court would reach.

As the states have abandoned the harsh and outdated rule of contributory negligence they have replaced it with one of two general types of comparative negligence. A number of jurisdictions have adopted "pure" comparative negligence. Under this rule, every party is liable for its own share of the negligence. If, for example, a plaintiff bears 60% of the responsibility for the injuries he has suffered, he will bear 60% of the cost, while the negligent defendant whose responsibility is 40% will be liable for 40% of the cost. Other jurisdictions, including North Dakota, have opted for a system of "modified" comparative negligence. These systems vary in detail, but all prohibit a plaintiff who is assigned more than 50% of the causal negligence from recovering any damages. Following this approach the 40% negligent defendant in the example above would be completely free from any liability. Whatever the merits of the policy reasons for the adoption of modified comparative negligence, such systems lead to a number of unavoidable complications, one of which confronts this court today.

Modified comparative negligence jurisdictions follow one of two rules for determining the damage award in cases with multiple tortfeasors at least one of which is less negligent than the plaintiff: the "Wisconsin rule" and the "unit rule." Under the Wisconsin rule the plaintiff's share of the negligence is compared in turn with the negligence apportioned to each individual defendant. Any defendant whose percentage of the negligence is lower than, or, in North Dakota, equal to, the plaintiff's, is dismissed from the case. Under the unit rule the plaintiff's share of the negligence is compared to the sum of the shares of negligence apportioned to the other negligent actors. If the plaintiff's share is less than that sum, then the plaintiff can recover from each of the defendants. This court must determine which of these rules should, from the perspective of the North Dakota Supreme Court, be applied in this case.

Of the thirty seven North Dakota Supreme Court cases in which NDCC § 9-10-07 is cited, three touch on the issue at

hand. The court's recitation of the facts in *Keyes v. Amundson,* 343 N.W.2d 78 (N.D. 1983) (Keyes I), reveals that the jury had apportioned 40% of the negligence to the plaintiff and 40% and 20% to the two defendants, and that the trial court, following the Wisconsin rule, had dismissed the action. The supreme court, however, specifically disavowed any endorsement of the Wisconsin rule that might have been implied by this recitation of the facts.

> We express no opinion on whether or not § 9–10–07, N.D.C.C., prohibits recovery in this situation. Other jurisdictions construing similar statutes have reached varying results in cases where the plaintiff's negligence is as great as each individual defendant's negligence, but less than the aggregate negligence of all defendants.... Because Keyes has not raised the issue, we need not address it at this time.

343 N.W.2d at 80, n. 1.

Similarly, in *Keller v. Vermeer Mfg. Co.,* 360 N.W.2d 502 (N.D.1984), the recitation of the facts reveals that the trial court applied the Wisconsin rule, but again that ruling was not challenged on appeal and the supreme court noted that it did not review the issue. 360 N.W.2d at 503, 504, n. 1. Finally, in *Keyes v. Amundson,* 359 N.W.2d 857 (N.D.1984) (Keyes II, issued the same day as *Keller*), the instant issue was certified to the supreme court by a state district court, but the supreme court declined to rule for lack of ripeness. 359 N.W.2d at 858, 859. After reviewing the North Dakota case law this court concludes that the present issue has been recognized by the North Dakota Supreme Court as being a completely open question unaffected by precedent in the law of this state.

In *Bartels v. City of Williston,* 276 N.W.2d 113 (N.D.1979), this court certified three questions concerning the interpretation of § 9–10–07 to the North Dakota Supreme Court. In answering those questions, the supreme court relied particularly on the case law of Minnesota and Wisconsin. The supreme court stated that the basis for this reliance was that North Da-

kota had derived § 9–10–07 from the Minnesota comparative negligence statute, which had been derived from the Wisconsin statute, and that this history raised the presumption that interpretation of North Dakota's statute should follow the path set by those states. 276 N.W.2d at 118. This presumption, however, is not absolute. The supreme court did not slavishly follow the Minnesota and Wisconsin rulings, but rather gave them particular consideration and found the rationale presented in them "persuasive." 276 N.W.2d at 120. The court also reviewed the case law of other states with similar statutes. 276 N.W.2d at 120, 121.

In determining the effect of § 9–10–07 in *Johnson v. Hassett,* 217 N.W.2d 771, 779, 780 (N.D.1974) the supreme court referred approvingly to, but did not rely on or defer to, Nebraska and Wyoming case law. The court reviewed but then explicitly rejected the rulings of Minnesota and Wisconsin on the application of comparative negligence statutes in *Mauch v. Manufacturers Sales & Service, Inc.,* 345 N.W.2d 338 (N.D. 1984). No case can be discovered in which Minnesota or Wisconsin case law was dispositive on an issue involving § 9–10–07. This court concludes that the North Dakota Supreme Court would look first to the decisions of those states, and would follow them unless there was some reason for not doing so.

Minnesota follows, and Wisconsin initiated, the Wisconsin rule. *Marier v. Memorial Rescue Service, Inc.,* 296 Minn. 242, 207 N.W.2d 706, 707, 708 (1973), *Walker v. Kroger Grocery & Baking Co.,* 214 Wis. 519, 252 N.W. 721, 727, 728 (1934). Absent any countervailing considerations, that rule should be applied in this case. There are, however, a number of countervailing considerations.

■ The Wisconsin rule is the minority rule. This court has discovered fourteen states that follow the unit rule, but only six that follow the Wisconsin rule. Unit rule: *Walton v. Tull,* 234 Ark. 882, 356 S.W.2d 20 (1962), *Mountain Mobile Mix, Inc. v. Gifford,* 660 P.2d 883 (Colo.1983), *Wong v.*

*Hawaiian Scenic Tours, Ltd.,* 64 Hawaii 401, 642 P.2d 930 (1982), *Pape v. Kansas Power and Light,* 231 Kan. 441, 647 P.2d 320 (1982), *Graci v. Damon,* 6 Mass.App. 160, 374 N.E.2d 311 (1978), *Young's Mach. Co. v. Long,* 100 Nev. 692, 692 P.2d 24 (1984), *Hurley v. Public Service Co. of New Hampshire,* 123 N.H. 750, 465 A.2d 1217 (1983), *Erlich v. First National Bank of Princeton,* 208 N.J.Super. 264, 505 A.2d 220 (1984), *Laubach v. Morgan,* 588 P.2d 1071 (Okl.1978), *Johnson v. Tilden,* 278 Or. 11, 562 P.2d 1188 (1977), *Orluck v. Borough of Harrisville,* 334 Pa.Super. 329, 483 A.2d 474 (1984), *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 428 (Tex.1984), *Jensen v. Intermountain Health Care, Inc.,* 679 P.2d 903 (Utah 1984), *Adkins v. Whitten,* 297 S.E.2d 881 (W.Va.1982). Wisconsin rule: *Mishoe v. Davis,* 64 Ga.App. 700, 14 S.E.2d 187 (1941), *Odenwalt v. Zaring,* 102 Idaho 1, 624 P.2d 383 (1981), *Marier v. Memorial Rescue Service, Inc.,* 296 Minn. 242, 207 N.W.2d 706 (1973), *Stannard v. Harris,* 135 Vt. 544, 380 A.2d 101 (1977), *Walker v. Kroger Grocery and Baking Co.,* 214 Wis. 519, 252 N.W. 721 (1934), *Bd. of County Comm'rs of the County of Campbell v. Campbell,* 623 P.2d 1174 (Wyo. 1981).

The unit rule is the modern trend. Of the six Wisconsin rule states, four adopted the rule ten or more years ago. *See* 14 S.E.2d 187, 207 N.W.2d 706, 380 A.2d 101, 252 N.W. 721. Seven states have had to choose between the alternative rules in the last five years, and all seven have chosen the unit rule. *See* 660 P.2d 883, 642 P.2d 930, 374 N.E.2d 311, 465 A.2d 1217, 588 P.2d 1071, 483 A.2d 474, 679 P.2d 903.

It is evident that the weight of authority is heavily in favor of the unit rule. Furthermore, even the states that have adopted the Wisconsin rule do not appear to strongly support it. None of the six opinions cited above in which state high courts chose the Wisconsin rule was based on arguments supporting the rule on its merits. As the Utah Supreme Court observed, "almost without variation, those states that have adopted the Wisconsin rule have done so on the rather wooden analysis that the Legislature must have intended to adopt the court decisions construing the Wisconsin statute as a part of that state's law." 679 P.2d at 909. This approach, based only on a canon of statutory construction, has been thoroughly repudiated. *See, e.g.,* 642 P.2d at 932, 679 P.2d at 905, 624 P.2d at 388–394 (Bistline, J., dissenting). Suffice to say that, as discussed above, the North Dakota Supreme Court gives serious consideration to the judicial gloss of the source state of a statute, but does not abdicate its judicial and intellectual responsibilities in doing so. Following the supreme court's approach, the fact that North Dakota derived § 9–10–07 from Wisconsin by way of Minnesota creates a presumption in favor of Wisconsin case law, but it does not settle the question without further inquiry.

The other argument generally relied on by courts adopting the Wisconsin rule is that their comparative negligence statute is phrased in terms of a single defendant, as is North Dakota's: "if such negligence was not as great as the negligence of the person against whom recovery is sought...." NDCC § 9–10–07. The Century Code contains a provision aimed at preventing this kind of misplaced reliance. "Words used in the singular number include the plural and words used in the plural number include the singular, except when a contrary intention plainly appears." NDCC § 1–01–35. The intention appearing from the text of § 9–10–07 is, of course, not plain. It is not clear whether the legislature intended to excuse all defendants whose negligence is less than the plaintiff's or to limit recovery only to those plaintiffs who bear less than half the fault for their own injuries. In the absence of a plain meaning of § 9–10–07's text, § 1–01–35 becomes operative, and the term "person" in § 9–10–07 must be taken to include both the singular and the plural. This statutorily mandated rule of construction requires the adoption of the unit rule, as it aggregates the negligence of the other parties at fault for comparison with the negligence of the plaintiff.

Perhaps the most telling strike against the Wisconsin rule is that it is no longer supported by the Wisconsin Supreme Court.

> This case is one of many cases which have come before this court involving multiple party tortfeasors.... The majority of the court has become convinced that comparing the negligence of the individual plaintiff to that of each individual tortfeasor—rather than comparing the negligence of the individual plaintiff to that of the combined negligence of the several tortfeasors who have collectively contributed to plaintiff's injuries—leads to harsh and unfair results....

*May v. Skelly Oil Co.*, 83 Wis.2d 30, 264 N.W.2d 574, 578 (1978). It appears that at present the Wisconsin Supreme Court adheres to the rule because it considers itself bound by its prior holdings and the state legislature's failure to counteract them. *Reiter v. Dyken*, 95 Wis.2d 461, 290 N.W.2d 510, 515–517 (1980). The North Dakota Supreme Court is not caught in such a trap, and so those considerations do not apply in this state.

The factors leading to the adoption of the unit rule are numerous and compelling. This court has considered the following factors in weighing its decision: the unit rule is the majority rule and the modern trend; those courts that have most thoroughly reviewed the arguments of policy and law have chosen the unit rule, while those courts opting for the Wisconsin rule have generally done so because of undue deference to a canon of statutory construction or misplaced reliance on statutory phraseology; application of the unit rule in North Dakota is mandated by § 1–01–35. Further arguments against the Wisconsin rule and in favor of the unit rule have been made. *See, e.g.,* 483 A.2d at 483–489, 679 P.2d at 904–909. The only factor this court can discover that would lead the North Dakota Supreme Court to adopt the Wisconsin rule is the language in *Bartels* stating that the supreme court would turn first to Wisconsin case law when interpreting § 9–10–07. Even if the Wisconsin Supreme Court still supported its own rule, this

court concludes that the countervailing considerations stated above would lead the North Dakota Supreme Court to join those state courts that have chosen the unit rule. The test of time in the state with the longest experience with the Wisconsin rule has shown it to be inequitable and unworkable. This court is guided by the explanation of the North Dakota Supreme Court's approach to such matters that was presented in *Bartels.* The late Justice Sand, writing for the court with great clarity and insight, stated;

> After examining the case law of the various states—Minnesota and Wisconsin included—it becomes apparent that each state struggled with growing pains and went through a period of refining its earlier decisions to eliminate inequities and other difficulties. We would be foolhardy to go through a similar process of trial and error when we now have readily available, the refined product gained through the experience of those states which have had to struggle with some of the same problems from the period of adoption to subsequent modification.

276 N.W.2d at 120.

Following this approach, this court concludes that the North Dakota Supreme Court would profit from the misfortune of Wisconsin, and avoid placing itself in the trap in which that court finds itself. This court is convinced that the correct decision is to apply the unit rule in this case, and that that is the decision the North Dakota Supreme Court would reach.

■ Application of the unit rule in this case raises the issue of whether "the person against whom recovery is sought" includes statutorily immune employers who were not made parties to a suit. Other states have reviewed this issue and determined that they are to be included. *See, e.g., Pape v. Kansas Power and Light Co.,* 231 Kan. 441, 647 P.2d 320, 326 (1982) (Facts parallel those in the present case), *Baird v. Phillips Petroleum Co.,* 535 F.Supp. 1371, 1378 (D.Kan.1982), *Gaither by and through Chalfin v. City of Tulsa,*

**518**

664 P.2d 1026, 1029 (Okl.1983). It would be futile to require a plaintiff to sue his statutorily immune employer in order to protect his right of recovery. In this case, therefore, Beaudoin's negligence, 30%, will be compared against the negligence of Texaco and Wireline, 70%. Since Beaudoin's negligence is less, he can recover.

 In North Dakota a joint tortfeasor is liable for the share of negligence attributed to a statutorily immune employer. *Layman v. Braunschweigische Maschinenbauanstalt, Inc.,* 343 N.W.2d 334, 344–350 (N.D.1983). In this case, then, Texaco, which was only 10% contributorily negligent, will be forced to pay 70% of the damages. This is clearly an inequitable result, but given the current state of the law it is unavoidable.

If the Wisconsin rule were applied to the facts of this case, Beaudoin, who was only 30% contributorily negligent, would be denied any recovery. This would be an inequitable result. Further, it would be an inequitable result imposed by the operation of the comparative negligence provision of § 9–10–07. The result actually reached is also inequitable, but the inequity is imposed by the operation of the joint and several liability provision of § 9–10–07 and the immunity provision of § 65–04–28. As was noted at the opening of this order, it is a collision of legal principles that renders an equitable result in this case impossible. This court has declined to adopt an outmoded rule that works inequity, but another outmoded and inequitable rule, joint and several liability, still remains to prevent a just outcome. Some states have abolished this rule as a part of their statutory system of comparative negligence, *see, e.g., Teepak, Inc. v. Learned,* 237 Kan. 320, 699 P.2d 35, 38 (1985), but the North Dakota Legislature has not yet done so. If it were to adopt a several liability rule, then the combination of that rule and the unit rule would produce more nearly equitable results than can be achieved if either the Wisconsin rule or the joint and several liability rule is present.

Therefore it is ORDERED:

That plaintiff Mark Chris Beaudoin shall have judgment against defendant Texaco, Inc. in the sum of 70% of $44,-057.04, that is $30,839.93, plus interest thereon from the date of judgment and costs and disbursements as taxed by the clerk and added to the judgment. The clerk shall prepare and enter the judgment.